No. 97,652

LISA BOLDRIDGE, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(215 P.3d 585)

Opinion filed September 11, 2009.

*Jean K. Gilles Phillips*, of Paul E. Wilson Defender Project, University of Kansas School of Law, of Lawrence, argued the cause and was on the briefs for appellant.

*Rex L. Lane*, special prosecutor, of Atchison, argued the cause, and *Paul J. Morrison*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, C.J.: Lisa Boldridge's first-degree murder conviction and hard-50 sentence were affirmed by this court on direct appeal. *State v. Boldridge*, 274 Kan. 795, 57 P.3d 8 (2002), *cert. denied* 538 U.S. 950 (2003). Her case comes before us again on our grant of Boldridge's petition for review of the Kansas Court of Appeals' decision regarding her K.S.A. 60-1507 motion. A divided panel of the Court of Appeals affirmed the district court's denial of her motion regarding ineffective assistance of trial counsel, finding that Boldridge was adequately represented by counsel during the trial of her case. *Boldridge v. State*, No. 97,652, unpublished opinion filed June 13, 2008. Judge Greene dissented, explaining that he interpreted the record to demonstrate "multiple and egregious errors of trial counsel [that] truly undermined [his] confidence in the outcome of Lisa Boldridge's trial." *Boldridge*, slip op. at D-1 (Greene, J., dissenting). We granted Boldridge's petition for review, which only raised issues of ineffective assistance of counsel at trial. We now reverse the decision of the Court of Appeals affirming the district court on the issue involving the admissibility of hearsay evidence, reverse the decision of the district court on that same issue, affirm both courts on the other claims regarding ineffective assistance of counsel at trial, and remand the case with

directions to the district court for further proceedings consistent with our opinion.

We note that the Court of Appeals also held that Boldridge was inadequately represented by counsel at sentencing. Based on this conclusion, the Court of Appeals vacated Boldridge's sentence and remanded her case to the district court for resentencing. Slip op. at 19-20. The question of inadequacy of counsel at sentencing is not before us, and the decision of the Court of Appeals is final as to Boldridge's arguments relating to her attorney's performance at sentencing. Boldridge's sentence is therefore vacated. If the district court determines on remand that Boldridge is not entitled to a new trial, she must be resentenced in accordance with the Court of Appeals opinion.

In her petition for review, Boldridge claims that her constitutional right to counsel at trial was violated in a number of ways.

First, Boldridge contends she was given inaccurate legal advice by her trial counsel, Charles Tuley, that violated her right to effective assistance of trial counsel. In particular, Boldridge asserts Tuley did not understand that his client could be convicted as an aider and abettor if she was charged in the complaint as a principal. Boldridge alleges that, based on this misunderstanding, Tuley advised her to waive her right to a jury trial, as the court would better comprehend this legal argument. Boldridge also claims this advice by counsel caused her to forego a change of venue granted by the trial court since she was planning on having a bench trial; instead, her trial took place in Atchison County where the killing had occurred.

In addition to her claims regarding counsel's inaccurate legal advice, Boldridge claims counsel's performance at trial was constitutionally defective because he failed to rebut evidence of her prior convictions with information regarding the long history of domestic abuse inflicted on her by her former husband (the victim of the underlying murder). She also claims her counsel's cross-examination of the prosecution's star witness was constitutionally deficient and denied her a fair trial.

Boldridge also contends her trial counsel could not provide constitutionally effective performance because he labored under actual

conflicts of interest that divided his loyalties. Finally, Boldridge claims cumulative error denied her right to a fair trial.

## TRIAL COUNSEL'S ALLEGED CONFLICTS OF INTEREST

Before any consideration of the questions involving advice given to Boldridge by counsel or counsel's alleged deficient and prejudicial performance in representing her at trial, we take up as a threshold issue the question of counsel's alleged conflicts of interest.

The Sixth Amendment to the United States Constitution guarantees in "all criminal prosecutions" that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This Sixth Amendment right to counsel is made applicable to state proceedings by the Fourteenth Amendment to the Constitution. See *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963). This court has explained that the right to counsel guaranteed by these provisions is the right to effective assistance of counsel. *Chamberlain v. State,* 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh. denied* 467 U.S. 1267 [1984]). Similarly, a defendant in a criminal trial has a constitutional right to "representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 67 L. Ed. 2d 220, 101 S. Ct. 1079 (1981).

Allegations of ineffective assistance of counsel, whether based on claims of deficient performance or on a conflict of interest, involve mixed questions of fact and law. This court therefore reviews the underlying factual findings for substantial competent evidence and the legal conclusions based on those facts de novo. See *State v. Gleason,* 277 Kan. 624, 644-45, 88 P.3d 218 (2004).

To demonstrate that a conflict of interest resulted in ineffective assistance of counsel, a defendant has the burden of proving a reversible conflict—that is, (1) a conflict of interest (2) that affected the adequacy of the attorney's representation. See *Mickens v. Taylor,* 535 U.S. 162, 168, 152 L. Ed. 2d 291, 122 S. Ct. 1237, *reh. denied* 535 U.S. 1074 (2002); *Gleason,* 277 Kan. at 650. A defendant who can demonstrate that a conflict of interest affected the

adequacy of his or her counsel's representation need not demonstrate prejudice in the traditional sense, which requires the defendant to prove that counsel's deficient performance affected the outcome of the trial, due to the difficulty of establishing such a claim in cases based on conflicting loyalties. See *Mickens*, 535 U.S. at 174.

*Appointed Counsel Acting as Pro Tempore Judge*

Boldridge argues that Tuley's representation fell below the objective standard of reasonableness guaranteed by the Sixth and Fourteenth Amendments because, prior to his appointment as her counsel, he had acted as a pro tempore part-time judge in Atchison County in May 2000 on matters directly related to her first-degree murder prosecution. The record discloses that while serving as pro tempore judge, Tuley signed various inquisitional subpoenas to obtain telephone records in the criminal investigation that eventually resulted in a charge of first-degree murder against Boldridge. The records acquired as a result of those subpoenas were later used as evidence against Boldridge at her murder trial to corroborate the testimony of other witnesses regarding various telephone calls Boldridge made around the time of the murder.

The record discloses that at the time of his appointment, Tuley had spoken with Boldridge about his service as a pro tempore judge and his involvement with subpoenas for "telephone records." Counsel explained that he never reviewed any documents in conjunction with the Boldridge's murder case. When Boldridge was asked by the district court at the appointment hearing whether she had discussed the nature of her counsel's involvement as a pro tempore judge with him, Boldridge indicated that Tuley had explained his pro tempore service "in depth" and that Boldridge saw no conflict in Tuley representing her during her trial for murder.

Boldridge related during her K.S.A. 60-1507 hearing that Tuley (who died prior to the K.S.A. 60-1507 hearing) told her that his previous service as a pro tempore judge "wasn't really a big deal" and that he happened to be sitting on the bench the day the subpoenas needed to be signed since the full-time judges in the area were out of town. While Boldridge explained that counsel advised

her of the conflict initially, she was never given an opportunity to discuss the ramifications of the conflict with another attorney. She testified at the hearing on her motion that she waived the conflict because she "was under the impression it really wasn't that big of a deal."

The district court concluded Boldridge had presented no evidence at the K.S.A. 60-1507 hearing that Tuley was operating under a conflict of interest that called for an automatic disqualification and that Boldridge waived any objections to the alleged conflict on the record. The Court of Appeals majority agreed, noting that Boldridge "cite[d] no authority prohibiting the waiver of a conflict of interest," that Boldridge "knew of Tuley's pro tem judicial service in signing the subpoenas for phone records," and that Boldridge "specifically waived that conflict so Tuley could represent her in the criminal case." *Boldridge*, slip op. at 10.

Boldridge now argues that our decision in *State v. Rice*, 227 Kan. 416, 607 P.2d 489 (1980), requires that we reverse her conviction of first-degree murder due to her counsel's prior actions a pro tempore judge. *Rice* involved allegations by a defendant that his defense counsel had operated under an unconstitutional conflict of interest because one of the defense counsel's partners in his law firm also served as a part-time municipal judge. We explained in *Rice* that "[e]arly opinions of the advisory section of the ethics committee of the Kansas Bar Association have held that a lawyer holding a position as a part-time municipal judge, city attorney or county attorney would be precluded from representing criminal defendants in all courts. [Citation omitted.]" 227 Kan. at 420-21. Quoting another ethics committee report, *Rice* noted:

" 'Lawyers holding part-time positions as Judges or Prosecuting Attorney, should, of course, never appear as counsel for defendants in criminal matters in the Courts in which they have responsibility. It is the opinion of the Committee, however, that they may be far enough removed that they can appear in other Courts, in which they have no substantial responsibility, as counsel for criminal defendants without giving an appearance of impropriety.' " 227 Kan. at 421.

The *Rice* court recognized that there was currently "no specific provision in the Code [of Professional Responsibility] prohibiting representation of defendants in criminal cases by the partners or

associates of a judge or prosecutor." 227 Kan. at 420. But the court also noted that "this has long been a problem of courts and judges who have the responsibility to appoint counsel for indigent defendants." 227 Kan. at 420. *Rice* continued:

"It is often stated that such representation may give an appearance of impropriety and therefore should be carefully avoided under Canon 9, DR 9-101 (225 Kan. cix). On the other hand, it is the duty of every lawyer to assist the legal profession in fulfilling its duty to make legal counsel available. Thus, in any particular case there is a necessity to balance the conflicting duties and make a determination on an individual case by case basis." 227 Kan. at 420.

Applying these standards to the facts before it, *Rice* concluded that "there was no conflict of interest and . . . no appearance of impropriety" in the proceedings that would have disqualified the defendant's counsel. 227 Kan. at 422.

We note that despite its finding that a conflict of interest did not arise in that case, *Rice* emphasized that even if the defendant demonstrated that his defense attorney was acting under a conflict of interest, there must be some "showing of prejudice," as a " 'mere allegation of a conflict of interest of counsel is not sufficient to show a denial of an accused's constitutional right to the effective assistance of counsel.' " 227 Kan. at 422 (quoting *State v. Gross*, 221 Kan. 98, Syl. ¶ 2, 558 P.2d 665 [1976]). Because no conflict existed in that case, *Rice* did not discuss the subsequent prejudice assessment in greater detail.

Boldridge claims that *Rice* supports her argument that lawyers acting as part-time judges should "never" represent criminal defendants in courts where they serve. She argues that her counsel's actions in this case—previously serving as a judge and authorizing the issuance of subpoenas in the very case against her—were especially improper and require reversal of her first-degree murder conviction regardless of the effect on the outcome of the case.

While there was no specific rule governing representation by part-time judges at the time of our decision in *Rice*, our Code of Judicial Conduct (2008 Kan. Ct. R. Annot. 645) has been modified to proscribe such conduct. At the time of Boldridge's murder trial, the Code of Judicial Conduct stated: "A pro tempore part-time judge . . . shall not act as a lawyer in a proceeding in which the

judge has served as a judge or in any other proceeding related thereto except as otherwise permitted by Rule 1.12(a)" of the Kansas Rules of Professional Conduct (KRPC) (2008 Kan. Ct. R. Annot. 487). Code of Judicial Conduct, Rule 601A, Application of Code D(3) (2008 Kan. Ct. R. Annot. 675). KRPC 1.12(a) states:

"[A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or any other adjudicative officer or law clerk to such a person as an arbitrator, mediator or other third-party neutral, unless all parties to the proceedings give informed consent confirmed in writing." (2008 Kan. Ct. R. Annot. 487).

The revised Kansas Code of Judicial Conduct, which became effective March 1, 2009, is even more explicit in its prohibition of such conduct, stating that "[a]n occasional part-time judge shall not act as a lawyer in a proceeding in which the judge has served as a judge or in any other proceeding related thereto." Rule 601B, Application of Code V(B) (2009 Kan. Ct. R. Annot. 670).

The record establishes a conflict of interest in this case. Tuley's appointment as counsel for Boldridge in her trial for first-degree murder (and his acceptance of that appointment) after having authorized the issuance of subpoenas for telephone records in the investigation of that same murder case was clearly improper under the KRPC regulating attorneys and the Code of Judicial Conduct. Due to the nature of that conflict, the district court should not have appointed Tuley as Boldridge's counsel. Likewise, Tuley should have refused to accept an appointment that required an ethical violation. See KRPC 1.12(a).

We recognize that the Code of Judicial Conduct and the Kansas Rules of Professional Conduct for attorneys in this state provide for a waiver of such a conflict in circumstances where all parties give informed consent to the conflicted representation and where this consent is memorialized in writing. We must emphasize, however, that an oral statement by a defendant accepting counsel's appointment, without more, does not satisfy the waiver requirements. Although statements on the record by the court and the parties may in some instances substitute for the writing required by the KRPC, the record we examine today falls short of establishing any such waiver.

The hearing on Boldridge's waiver of the conflict was vague at best and did not explain the nature of the conflict at issue—that Tuley signed subpoenas authorizing government officers to obtain telephone records that would later be used as evidence of Boldridge's motive and opportunity at trial. Had this information been disclosed and the conflict more fully explored by the court and counsel, it is doubtful that Tuley would have been appointed to represent Boldridge. Boldridge testified at her K.S.A. 60-1507 hearing—the only proceeding where she was able to fully explain her understanding of the conflict in question—that she was "under the impression it really wasn't that big of a deal."

We conclude that the district court's rulings that Tuley's actions as a pro tempore judge in signing the subpoenas were "ministerial" and that Boldridge knowingly waived any conflict arising from those signatures were not supported by substantial evidence. The record does not support a conclusion that either party affirmatively waived or confirmed their consent to this conflicted representation in writing. Evidence presented at the K.S.A. 60-1507 hearing calls into question whether Boldridge truly appreciated the nature of Tuley's prior actions as pro tempore judge. For these reasons, we conclude that Boldridge has demonstrated that trial counsel acted under a conflict of interest when he accepted his appointment as her defense counsel. See *State v. Dixon*, 438 So. 2d 185, 185-86 (Fla. Dist. App. 1983) (finding that part-time prosecutor who signed defendant's indictment in grand jury proceedings could not subsequently serve as defendant's counsel at trial).

Nevertheless, the conflict found does not by itself entitle Boldridge to a reversal of her conviction. Structural error only occurs in very limited circumstances where errors "defy analysis by 'harmless-error' standards" because they "affect[] the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991); see *United States v. Gonzalez-Lopez*, 548 U.S. 140, 165 L. Ed. 2d 409, 126 S. Ct. 2557 (2006) (denial of right to counsel of choice); *Sullivan v. Louisiana*, 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993) (denial of the right to a jury trial by giving a defective reasonable-doubt instruction); *Waller v. Georgia*, 467 U.S. 39, 81 L. Ed. 2d

31, 104 S. Ct. 2210 (1984) (denial of the right to a public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 79 L. Ed. 2d 122, 104 S. Ct. 944 (1984) (denial of the right of self-representation); *Holloway v. Arkansas*, 435 U.S. 475, 488, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978) (denial of right to counsel when counsel was required by the court to simultaneously represent multiple defendants over counsel's objection); *Gideon*, 372 U.S. 335 (complete denial of right to counsel).

Our review of our Supreme Court Rules and case law demonstrates that Tuley's conflict in previously serving as a pro tempore judge is not a structural error requiring automatic reversal. First, the Kansas Code of Judicial Conduct and Kansas Rules of Professional Conduct for attorneys recognize that a conflict similar to the one we now consider can be waived by informed consent in writing. Because the type of conflict we consider in this case is waivable by the parties, it does not create a structural defect. Furthermore, our decision in *Rice* explains that even where a defendant demonstrates that an attorney was acting under a conflict of interest in violation of ethical rules, there must be some "showing of prejudice" before that conflict will cause the court to reverse a conviction. 227 Kan. at 422. In other words, the conflict created by Tuley's representation in this case does not require automatic reversal; rather, it is subject to the modified prejudice analysis set forth by the United States Supreme Court in *Mickens*. See 535 U.S. at 168.

Thus, in order to prevail upon this issue, Boldridge must demonstrate that the conflict affected the adequacy of the attorney's representation. See *Mickens*, 535 U.S. at 168. Specifically, Boldridge argues that Tuley's previous service as a pro tempore judge affected his representation by foreclosing his ability to object to the admission of the phone records obtained by his signature.

The subpoenas signed by Tuley as pro tempore judge were inquisitional subpoenas for telephone records. In *State v. Schultz*, 252 Kan. 819, 850 P.2d 818 (1993), this court held that a defendant does not have standing to challenge an inquisitional subpoena for phone records because an individual does not have a reasonable expectation of privacy in his or her phone records. 252 Kan. at 834-35. This conclusion was based on United States Supreme Court

precedent, which held that an individual has no legitimate expectation of privacy in information he or she voluntarily turns over to third parties. 252 Kan. at 822-24. Thus, telephone customers have no reasonable expectation of privacy in the telephone numbers they dial because they know that the phone company tracks those numbers and keeps records of calls made (as shown by a telephone customer's monthly statement). 252 Kan. at 834-35.

In *Smith v. Maryland*, 442 U.S. 735, 742-43, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979), the United States Supreme Court explained:

"[W]e doubt that people in general entertain any actual expectation of privacy in the numbers they dial. All telephone users realize that they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed. All subscribers realize, moreover, that the phone company has facilities for making permanent records of the numbers they dial, for they see a list of their long-distance (toll) calls on their monthly bills. . . . Telephone users, in sum, typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes. Although subjective expectations cannot be scientifically gauged, it is too much to believe that telephone subscribers, under these circumstances, harbor any general expectation that the numbers they dial will remain secret."

Under both this court's precedent in *Schultz* and the United States Supreme Court's decision in *Smith*, Boldridge could not challenge the inquisitional subpoenas for telephone records that Tuley authorized as a pro tempore judge because she had no expectation of privacy in those records. This outcome is true regardless of the identity of her trial counsel or of that attorney's previous involvement with the subpoenas in question.

Because Boldridge could not effectively challenge the inquisitional subpoenas or restrict access to her phone records, the fact that Tuley previously signed these subpoenas before his appointment had no effect on his ability to represent her during her trial. Boldridge's argument to this effect therefore fails. Boldridge has not shown that counsel's previous service as a pro tempore judge affected the adequacy of his representation at trial. Thus, counsel's service as a pro tempore judge is not a basis for reversal of Boldridge's conviction.

*Previous Representation of the Victim by Counsel's Associate*

Boldridge also claims that Tuley was unable to provide conflict-free representation because one of the attorneys working in his law firm, Robert Campbell, previously represented Kurt Boldridge (the murder victim) in a case that resulted in the termination of Boldridge's parental rights as to one of her sons. The district court determined that there was no conflict presented by Campbell's previous representation of Kurt because the previous case did not involve the same or a substantially related matter to the murder trial.

Boldridge does not argue that Tuley's firm's previous representation of Kurt in any way affected Tuley's representation of Boldridge during her murder trial. She merely asserts that Kurt's and her relationship was at the heart of the murder trial and that relationship also led to her various felony convictions that led to the previous termination action.

At best, the evidence presented at Boldridge's K.S.A. 60-1507 hearing demonstrated that there was a potential conflict of interest that arose out of Campbell's previous representation of Kurt. Because Boldridge did not in any way demonstrate that this potential conflict affected the adequacy of Tuley's representation, her claim for ineffective assistance of counsel based on an alleged conflict of interest does not provide a basis for relief.

## COUNSEL'S LEGAL ADVICE REGARDING AIDING AND ABETTING

Boldridge's primary argument in her K.S.A. 60-1507 motion is that her defense counsel Tuley provided ineffective assistance of counsel at trial because he gave her inaccurate legal advice that caused Boldridge to waive her right to a jury trial and also caused her to forego a requested change of venue. Boldridge asserts that Tuley made her believe she could not be convicted of murder if she did not pull the trigger and that a judge would understand this legal argument better than a jury would. In other words, Boldridge asserts that Tuley incorrectly advised her that because she had been charged as a principal, she could not be convicted on an aiding-and-abetting theory. Boldridge further claims that because Tuley relied on an incorrect understanding of aiding and abetting

and assumed the judge would dismiss the case due to the alleged defects in the complaint, he did not make adequate attempts to rebut the State's case against her.

Tuley passed away between the filing of Boldridge's K.S.A. 60-1507 motion and the date of the K.S.A. 60-1507 hearing. Because Tuley's death obviously rendered him unavailable at the evidentiary hearing on her motion, Boldridge attempted to testify as to advice Tuley gave Boldridge during the course of the criminal proceedings. The State objected to the evidence, asserting that Tuley's statements constituted inadmissible hearsay. Boldridge argued that Tuley's statements were not hearsay because they were not being offered to prove the truth of the matter asserted in that advice, but rather to demonstrate that the advice was given and the effect of that advice on her decisions to waive her change-of-venue request and her right to a jury trial. The district court sustained the State's objection and excluded the evidence, concluding that "[i]t is hearsay in [the court's] mind" and that the court was "unaware of any exception that would let [Tuley's statements] come in."

As a result of this decision, Boldridge was permitted to testify regarding her personal understanding of the law (allegedly resulting from Tuley's legal advice) that caused her to waive her jury trial and forego the change of venue, but she could not explain the content of the advice itself. The evidence introduced at Boldridge's K.S.A. 60-1507 hearing regarding the content of Tuley's advice was limited to transcripts documenting Tuley's repeated requests—both leading up to and during the trial—for a bill of particulars, as well as a few isolated statements Tuley made throughout the proceedings regarding the State's failure to prove all of the elements of the crime charged in the complaint.

The district court found that Boldridge failed to establish that Tuley had provided inaccurate legal advice. The court also found that even if Tuley did not understand the law regarding aiding and abetting, Boldridge could not demonstrate prejudice in light of the significant evidence presented against her at trial.

Boldridge appealed, asserting that the district court's exclusion of all evidence of the legal advice given by Tuley to Boldridge was improper and significantly hindered her ability to argue her case

at the evidentiary hearing. Boldridge renewed her claim that the statements were not hearsay because they were not offered to prove the truth of the matter stated. Boldridge claimed that she wished to testify regarding the statements to demonstrate (1) that the advice was given and (2) the effect of that advice on Boldridge's decision to waive her right to a jury trial and to forego a change of venue.

The Court of Appeals majority agreed with the district court's conclusion that the *content* of Tuley's statements was relevant to her claim that Tuley provided ineffective assistance of counsel by giving legal advice, rejecting Boldridge's claim that the statements were not offered for the truth of the matter asserted. *Boldridge v. State*, No. 97,652, unpublished opinion filed June 13, 2008, slip op. at 6. Judge Greene disagreed with this analysis, explaining:

"When [Boldridge] sought to testify as to the statements of her counsel that caused her to make strategic decisions, such statements were not offered to show the proof of the matter asserted. She was in no position before trial or at the 60-1507 hearing to show that the statements were wrong; she sought only to demonstrate what was said that caused her to make strategic decisions, including her waiver of a jury trial. This is a classic case of statements that are not offered to show the truth of the matters asserted. See *State v. Getz*, 250 Kan. 560, Syl. ¶ 2, 830 P.2d 5 (1992). Although the district court allowed her to testify to her 'understanding,' my reading of the transcript convinces me that her inability to say what her attorney actually told her significantly prejudiced her rights at the 60-1507 hearing." Slip op. at D-6 (Greene, J., dissenting).

In her petition for review, Boldridge renews her argument that Tuley's advice was not being offered to prove the content of the advice, but rather to show its effect on Boldridge's decisions during the course of the criminal prosecution against her. Boldridge asserts that the statements should be allowed because "Mr. Tuley's death before the [K.S.A. 60-1507] hearing cannot forever bar [Boldridge] from introducing testimony of what Mr. Tuley told her about her case."

*Governing Standards*

To support a claim of ineffective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must demonstrate (1) that counsel's perform-

ance was deficient, and (2) that counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial. *State v. Gleason*, 277 Kan. 624, 643, 88 P.3d 218 (2004). The "benchmark for judging any claim of ineffectiveness [as to counsel's performance] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. [Citations omitted.]" *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007).

Claims of ineffective assistance of counsel involve mixed questions of fact and law. 283 Kan. at 91. Once a district court has entered findings of fact and conclusions of law on such a claim, "an appellate court determines ' "whether the decision reached by the trial court follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have substantial support in the evidence." ' [Citation omitted.]" *Gleason*, 277 Kan. at 644-45.

In the case presently before us, Boldridge argues that the district court's findings of fact regarding the advice given by Tuley during the course of Boldridge's murder trial were inaccurate, as the district court excluded as hearsay any evidence of Tuley's statements. Thus, Boldridge's claim is at its base an argument as to the soundness of the district court's evidentiary ruling.

Like many evidentiary determinations considered on appeal, an appellate court reviews a trial court's admission or exclusion of hearsay statements for an abuse of discretion. *State v. Miller*, 284 Kan. 682, 708, 163 P.3d 267 (2007). This court has clarified, however, that a district court always abuses its discretion when its decision " 'goes outside the legal framework or fails to properly consider statutory limitations.' " 284 Kan. at 689 (quoting *In re J.D.C.*, 284 Kan. 155, Syl. ¶ 3, 159 P.3d 974 [2007]). For this reason, we review de novo whether a district court applied the correct legal standards when ruling on the admission or exclusion of evidence. See *State v. White*, 279 Kan. 326, 332-33, 109 P.3d 1199 (2005).

*Discussion and Analysis*

With these standards as a framework, we turn to the district

court's determination that the legal advice Tuley gave to Boldridge was inadmissible hearsay.

K.S.A. 60-460 defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." This type of evidence is inadmissible unless it falls under a recognized hearsay exception. "The theory behind the hearsay rule is that when a statement is offered as evidence of the truth asserted in it, the credibility of the asserter is the basis for the inference, and therefore the asserter must be subject to cross-examination. 6 Wigmore on Evidence § 1766 (Chadbourn rev. 1976)." *State v. Harris*, 259 Kan. 689, 698, 915 P.2d 758 (1996).

Boldridge claims the district court and Court of Appeals majority erred by concluding Tuley's statements were being offered to prove the truth of the matter asserted because the statements' relevance turned on their content. Boldridge asserts Tuley's legal advice was not being offered to show that the advice given was "true"—that is, to show the statements were correct statements of law. In fact, the essence of Boldridge's claim for ineffective assistance of counsel is that Tuley gave faulty and inaccurate legal advice. Rather, Boldridge claims she wished to testify as to Tuley's statements to show that the advice was given to her and to explain why she made the choices she did before trial (waiving her right to a jury trial and foregoing her venue change).

In our past cases, this court has identified at least three types of out-of-court statements that do not constitute hearsay under K.S.A. 60-460 because they are not offered to prove the truth of the matter asserted in the statements: "(1) those statements material to the case as part of the issue; (2) those statements which are verbal parts of an act; and (3) those statements used circumstantially as giving rise to an indirect inference but not as an assertion to prove the matter asserted." *Harris*, 259 Kan. at 699 (citing *State v. Oliphant*, 210 Kan. 451, 454, 502 P.2d 626 [1972]). This court has also "allowed the use of statements which would otherwise be hearsay to show that the defendant's story had changed over time, to show the defendant's state of mind, or to show that a *Miranda* warning was given. [Citations omitted.]" 259 Kan. at 699.

In order to prove Tuley provided constitutionally defective counsel by giving incorrect legal advice, Boldridge was required to show (1) that Tuley gave her inaccurate legal advice and (2) that Boldridge relied on that advice to her prejudice, depriving her of a fair trial. See *Bledsoe*, 283 Kan. at 90.

From the proffer contained in the record on appeal, Boldridge would have testified (had she been so permitted) Tuley told her that she could not be convicted as an aider/abettor since she was not charged as an aider/abettor and that a judge would understand the "legality" of this argument better than a jury would. Boldridge also testified that if she had not foregone the venue change and the case had been transferred to Wyandotte County, Tuley was still "leading [her] to believe that there wasn't another option but to waive [her] right[] to a jury trial." Thus, when Boldridge learned that an Atchison County judge would hear her case even after a change of venue, she waived the change since such an action would make no difference to the outcome of her trial.

By offering evidence of Tuley's legal advice, Boldridge was not trying to prove that the matter asserted in the advice was *true*. Tuley's alleged statements were incorrect under Kansas law. See *State v. Smolin*, 221 Kan. 149, 152, 557 P.2d 1241 (1976) ("By statute and case law this jurisdiction has long held that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he [or she] were a principal."). In fact, Boldridge's ineffective-assistance-of-counsel argument relies on Tuley's advice being *inaccurate*.

Instead of offering evidence of Tuley's advice to prove its accuracy, Boldridge was merely trying to demonstrate that Tuley *gave the advice* and that the advice caused Boldridge to waive her constitutional and statutory rights. Put in terms of our previous case law, Boldridge was attempting "not to prove the truth of the matter asserted, but merely to show that the statements were said," as well as "the defendant's state of mind" after she heard the statements. See *Harris*, 259 Kan. at 699. Because the statements were being offered not to prove the truth of the matter asserted in the advice but to show that the advice was given, they were not hearsay within the meaning of K.S.A. 60-460. Thus, the statements were admis-

sible, and the district court erred in excluding them as hearsay during the evidentiary hearing on Boldridge's K.S.A. 60-1507 motion.

We pause briefly to emphasize that in concluding Tuley's statements were admissible nonhearsay, this court does not make any findings regarding the *credibility* of Boldridge in reciting that proffered evidence. If Tuley would have been available as a witness during the evidentiary hearing on Boldridge's K.S.A. 60-1507 motion, he could have testified that he did or did not give the advice in question. In other words, he could have testified about *the credibility of Boldridge's statement* that he gave the advice in question. In much the same way, on remand the factfinder will have to assess the credibility of Boldridge's testimony regarding Tuley's legal advice and weigh the evidence accordingly.

The district court erred in excluding the evidence of Tuley's statements to Boldridge. Furthermore, there can be little question that, as Boldridge's K.S.A. 60-1507 counsel indicated at the K.S.A. 60-1507 hearing, the district court's blanket exclusion of Tuley's statements as hearsay "drastically impact[ed] [counsel's] ability to present [Boldridge's] case." Although Boldridge was allowed to testify as to her understanding of the legal matters in question and her decisions regarding her waiver of the jury trial and change-of-venue requests, her responses were hesitant because she was unable to explain what led her to that understanding. Without evidence of Tuley's actual advice to give cohesiveness to her argument, Boldridge was left to rely on vague statements made by Tuley during a pretrial conference and opening argument, asking the court to infer from those statements Tuley's understanding of legal principles. The district court's exclusion of all evidence of Tuley's advice to Boldridge had a significant effect on her ability to argue her K.S.A. 60-1507 motion.

Because the district court erroneously excluded evidence of Tuley's statements of legal advice as inadmissible hearsay at Boldridge's K.S.A. 60-1507 hearing, significantly hindering her ability to present her claim of ineffective assistance of counsel, the case must be reversed in part and remanded with directions to the district court for a new evidentiary hearing on that issue.

We now turn to the remaining issues presented in Boldridge's petition for review to determine the scope of the hearing on remand.

## OTHER CLAIMS ALLEGING CONSTITUTIONALLY DEFICIENT PERFORMANCE

Boldridge argues that Tuley's performance at trial violated her right to counsel under the Sixth and Fourteenth Amendments in two additional respects: First, Boldridge asserts that Tuley's failure to rebut evidence of her prior convictions with evidence as to the long history of domestic abuse suffered by Boldridge and inflicted by her ex-husband Kurt (the murder victim) was constitutionally deficient. Second, Boldridge asserts that Tuley did not adequately cross-examine the State's star witness, despite the fact that the witness had given several inconsistent statements to the authorities. After reviewing these claims, we find that neither rises to the level of constitutional deficiency necessary to succeed on a claim for ineffective assistance of counsel.

### Failing to Adequately Rebut Damaging Evidence

Boldridge claims that Tuley provided ineffective assistance of trial counsel when he failed to rebut evidence relating to Boldridge's prior acts of violence against Kurt. The evidence submitted at trial included Boldridge's previous arson conviction (setting fire to Kurt's home) that was overturned on appeal; various statements made by Boldridge that she wanted revenge against Kurt; and Kurt's statements to a friend, Allen Ternent, that he was afraid of what Boldridge might do.

Boldridge asserts that because Tuley did not present evidence of the long abusive relationship between Kurt and herself, the court was not given the opportunity to appreciate that Kurt—not Lisa—was the aggressor in their relationship. In particular, Boldridge argues that Tuley should have presented evidence regarding her history of seeking refuge in domestic violence shelters to demonstrate that she was not the source of the aggression in the relationship but rather was the victim of prolonged mental and physical abuse.

When considering this claim after the K.S.A. 60-1507 hearing, the district court noted that during Tuley's cross-examination of Ternent (Kurt's friend), Tuley "obtained testimony that the decedent [Kurt] visited [Boldridge] in prison, in part to maintain a relationship and communication regarding [Boldridge's] and decedent's son; and, that Ternent was led to believe that their relationship was good." The court further noted that this testimony "may have actually benefited [Boldridge]."

In addition to this evidence, the record demonstrates Tuley asked questions during his cross-examination of Carrie Vincent, who had testified for the State that Boldridge had stated while serving her prison sentence in the arson case that she wanted revenge against Kurt, that mitigated the effect of the evidence in question. In response to Tuley's questions, Vincent indicated women inmates often make threats against men they are "ticked off" at—and commonly indicate that they want to seek revenge— but "a lot of it is [just] talk."

Boldridge now argues that Tuley's strategy of downplaying the discord in her relationship with Kurt only served to bolster the incorrect impression that she was the source of the aggression between them.

The State, however, claims that Tuley's decision to downplay the aggressive history of Boldridge's relationship with Kurt was part of a coherent legal effort to minimize evidence of motive. The State properly points out that evidence of an abusive relationship is a double-edged sword that could cut either way with a factfinder and might actually strengthen evidence relating to motive and intent.

Even if other trial attorneys or members of this court might have acted differently in Tuley's position, Tuley's decision not to introduce evidence of domestic abuse does not fall below an objective standard of reasonableness in this case. See *Bledsoe*, 283 Kan. at 90 ("Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective

at the time."). Tuley's decision to exclude that evidence from the defense did not render his representation constitutionally deficient.

### Failing to Adequately Cross-Examine Goodpasture

Boldridge claims Tuley failed to adequately cross-examine John Goodpasture, the State's eyewitness who testified that he was present at the time of Kurt's shooting and explained in detail the events of that evening. Notably, Goodpasture testified that Boldridge met him, Kirk Wilson (the person who actually shot Kurt), and Gary Skeen at Kurt's house; that she let them into the house; that she procured the shotgun and the ammunition used to murder Kurt; that she was present when Wilson shot Kurt; that she stayed at Kurt's house after the men left; and that she met the men at the river later that night and helped dispose of the shotgun.

Boldridge correctly points out in her K.S.A. 60-1507 motion that Goodpasture's version of that night's events changed between the statement he originally provided to police (where he made no mention of Lisa) and the statement given through his testimony at trial. In fact, Goodpasture's trial testimony was the fifth version of the story he provided.

It is clear from the transcript of the trial that Tuley sought to discredit Goodpasture's testimony (1) by indicating he had made several inconsistent statements and (2) by emphasizing his drug and alcohol abuse and the effect of that abuse on his ability to recall certain events. Although Tuley's cross-examination of Goodpasture raised the fact the witness had provided several different versions of his story to the police, it focused primarily on Goodpasture's abuse of alcohol and drugs and his resultant difficulty remembering details of the evening.

In her K.S.A. 60-1507 motion, Boldridge argued that this cross-examination was constitutionally deficient because Tuley did not question Goodpasture about the specific inconsistencies in his various versions of the event. This court has previously recognized, however, that "[t]he decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after

consultation with his or her client. [Citation omitted.]" *Bledsoe,* 283 Kan. at 92.

We conclude that Tuley's cross-examination technique was not objectively unreasonable. Four of the five statements given by Goodpasture, although inconsistent, indicated Boldridge played a substantial role in the planning and executing of Kurt's murder. The fact that Tuley did not ask more specific questions relating to Goodpasture's inconsistent statements does not render his representation constitutionally deficient, as the specific details could potentially have emphasized the constant theme that Boldridge aided or abetted in the crime.

We further note that Boldridge herself gave at least three inconsistent statements to the authorities regarding her involvement in Kurt's death. It is conceivable that Tuley was attempting to mitigate the effect of Boldridge's inconsistent statements on her own credibility. Regardless of whether other trial attorneys or members of this court would have made different decisions if serving as Boldridge's counsel, Tuley's cross-examination of Goodpasture was not objectively unreasonable.

## Cumulative Error

Finally, Boldridge argues that even if the issues raised in her brief and petition for review do not individually rise to the level of reversible error, the accumulation of those alleged errors denied her right to a fair trial. The test to determine whether cumulative errors require reversal of a defendant's conviction is "whether the totality of circumstances substantially prejudiced the defendant and denied him [or her] a fair trial." *State v. Ackward,* 281 Kan. 2, 29, 128 P.3d 382 (2006).

We have determined that the district court at the K.S.A. 60-1507 hearing erroneously excluded testimony regarding Tuley's legal advice to Boldridge during the course of her trial for murder. Based on this conclusion, we find that the case should be remanded for a new evidentiary hearing on Boldridge's claim in her K.S.A. 60-1507 motion that Tuley provided ineffective assistance of counsel by giving faulty legal advice, providing Boldridge the opportunity to present evidence of Tuley's statements.

As our previous discussion illustrates, however, the other claims raised in Boldridge's petition for review do not warrant reversal or remand, either individually or collectively, and we affirm the district court and the Court of Appeals on those claims. Boldridge's assertion of cumulative error is without merit.

As previously stated, the Court of Appeals decision vacating Boldridge's sentence and remanding for a new sentencing hearing is not subject to our review. That disposition stands as originally ordered.

The judgments of the district court and the Court of Appeals subject to our review on the issues of ineffective assistance of counsel at trial are affirmed in part and reversed in part. The case is remanded with directions to the district court for an evidentiary hearing on Boldridge's claim that her trial attorney gave incorrect legal advice that rendered his representation constitutionally inadequate.

Affirmed in part, reversed in part, and remanded with directions to the district court.