NOT DESIGNATED FOR PUBLICATION

No. 116,610

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DARRIN RAY KEBERT JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; JEFFREY D. GOSSARD, judge. Opinion filed May 18, 2018. Reversed and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM: Darrin Ray Kebert Jr. pled guilty to burglary, criminal damage to property, and theft. Prior to sentencing, Kebert filed a pro se motion to withdraw his plea and dismiss the charges, asserting his counsel was ineffective for failing to file a motion to dismiss based on the failure to bring him to trial within the time limit set by the Interstate Agreement on Detainers (IAD). Kebert's counsel followed Kebert's filing with a formal motion, absent the allegations of ineffective assistance of counsel. The district court found Kebert's counsel had waived his right to trial within the IAD time limit because his counsel agreed to a trial date outside that limit. Kebert now argues it was error for the district court to fail to inquire into Kebert's claim of ineffective assistance of

1

counsel and to fail to find his counsel ineffective. We find unresolved issues of fact requiring remand to the district court for further proceedings in accordance with our findings.

FACTS AND PROCEDURAL BACKGROUND

On February 4, 2015, the State charged Kebert with burglary, criminal damage to property, and theft. On March 31, 2015, the district court filed Kebert's pro se "Notice of Place of Imprisonment and Demand for Speedy Trial." This notice informed the district court that Kebert was presently incarcerated in a federal prison and demanded he be brought to trial within 180 days in accordance with the IAD. See K.S.A. 2017 Supp. 22-4303.

The district court held a review hearing on Kebert's filing at which the State argued Kebert's notice did not comply with the IAD because it was not accompanied by a certificate from the warden of the federal prison. At the State's suggestion, the district court appointed an attorney for Kebert and continued the case for a further review hearing.

On April 8, 2015, Kebert sent a letter to the district court and his appointed attorney, Heath Lampson, which again stated he was in federal custody and noted his intention to seek a "writ of habeas corpus ad prosequendum." Attached to this letter was documentation titled "Sentencing Monitoring and Computation Data." Another review hearing was held on April 16, 2015, and Lampson informed the district court that he had sent Kebert a letter explaining to him the procedures he needed to follow to "move this case forward." Both the State and Lampson agreed that the documents Kebert had filed did not comply with the IAD. The district court found Kebert had not complied with the IAD and set the case for further review on July 9, 2015.

2

At the July 9, 2015 hearing, Lampson said he sent Kebert paperwork and a letter advising him to get proper authorization from the warden. The district court found Kebert had failed to comply with the IAD and removed the case from the court's docket. The district court then filed a journal entry on July 17, 2015, that denied Kebert's motion for the disposition of his detainer.

Kebert later filed an IAD compliant request for disposition of his detainer. Although the request for disposition is not included in the record, the parties agree that the request was filed after July 17 and before October 30, 2015. On October 30, 2015, the district court scheduled a detainer hearing for December 29, 2015.

At the December 29, 2015 hearing, Lampson said plea negotiations had begun and he noted a preliminary hearing needed to be scheduled. The State informed the district court that the case needed to be set for trial and stated the "detainer was filed on October 13th of this year. That would mean we have 180 days to try the Defendant within that detainer time." The court scheduled a preliminary hearing for January 19, 2016.

On January 19, 2016, the State requested a three-week continuance to prepare for the preliminary hearing. Lampson stated Kebert was serving a federal sentence and was in the county on a 180-day writ. Lampson objected to the continuance and asked that if the court granted a continuance, that time be charged to the State for speedy trial purposes. The district court granted the continuance and continued the preliminary hearing to February 9, 2016.

The preliminary hearing did proceed on February 9, 2016, and the district court bound Kebert over for trial on all three charges. The parties then discussed scheduling a trial date and the district court told them a setting was available on May 12 and 13, 2016. The parties agreed, and the court set the trial for those dates along with a settlement

3

conference on April 12, 2016. Neither the parties nor the district court discussed the IAD 180-day limitation.

At the April 12, 2016 hearing, Lampson told the court that the State and Kebert had reached no agreement. He then asked that the dates of the trial either be advanced or continued because of a conflict in his schedule. Lampson told the district court that Kebert was "in custody on another case so speedy trial is not an issue." The district court rescheduled the trial for May 18 and 19, 2016.

On April 28, 2016, Kebert entered no contest pleas on all three counts. The district court accepted the pleas and found him guilty. Before sentencing, however, on June 8, 2016, Kebert filed a pro se "Motion to [W]ithdraw from Plea Agreement and Dismiss [A]ll Charges," based on claims that his right under the IAD to be brought to trial within 180 days was violated and that his attorney had been ineffective. Kebert alleged he filed his request for disposition with the federal Bureau of Prisons on September 24, 2015, and therefore "entered plea agreement well past the allot[t]ed time given for prosecution." He also argued Lampson misled him to believe that he had no basis for dismissal based on the IAD and that Lampson "was ineffective in that a motion to dismiss should have been pursued."

At sentencing, Lampson said Kebert's pro se motion had merit and he asked for a three-week continuance to file a formal motion to withdraw plea and dismiss charges. The district court judge granted the continuance, stating:

> "Mr. Kebert, I'll tell you, normally on your Motion to Withdraw your plea *pro se*, my standard deal is you're not *pro se*, you do have an attorney so I won't accept or grant the motion, but it sounds like your attorney is asking for leave for three weeks to file a motion on your behalf following along the same lines of what you've filed, so I will allow for that continuance."

4

At no point during the hearing was there a reference to Kebert's claims of ineffective assistance of counsel and Kebert did not object either to Lampson's filing of the formal motion or his continued representation.

Lampson's motion argued the 180-day period for Kebert to be brought to trial expired, at the latest, on April 27, 2016. Since the pleas were entered on April 28, 2016, the motion contended Kebert should be allowed to withdraw his pleas and the charges then must be dismissed because the district court had lost jurisdiction the previous day.

After the State filed a response, Lampson filed an amended motion to dismiss. In the amended motion to dismiss, Lampson alleged Kebert's request for the disposition of his detainer was actually received on August 21, 2015, and the time limit expired on February 17, 2016. The amended motion argued that even if the January 19, 2016 continuance requested by the State was counted against Kebert, the 180-day period would have expired on March 9, 2016, well before Kebert entered his pleas. As before, the amended motion claimed the district court did not have jurisdiction to accept Kebert's pleas.

The State then responded to the amended motion to dismiss with the argument that when he agreed to a trial date outside of the IAD limit, Lampson waived Kebert's right to be brought to trial within 180 days. It based that argument on *New York v. Hill*, 528 U.S. 110, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000).

The district court took up the amended motion on July 26, 2016. At the conclusion of arguments, the district judge found "the setting of the trial date . . . outside the 180 days constitutes a waiver so I'm going to deny the Motion to Dismiss filed by the Defendant." The court sentenced Kebert, who timely appeals.

5

Kebert's appeal centers on the quality of assistance he received from his appointed counsel, Lampson. Kebert asserts the district court abused its discretion by failing to inquire into the claim of ineffective assistance of counsel contained in his pro se motion to withdraw plea and dismiss charges.

*Standard of review*

Under the Sixth Amendment to the United States Constitution, Kebert had a right to effective assistance of counsel during all critical stages of his criminal proceedings. *State v. Pfannenstiel*, 302 Kan. 747, 758, 357 P.3d 877 (2015). "Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981). "To protect a defendant's right to counsel under the Sixth Amendment to the United States Constitution, a district court must inquire into potential conflicts between a defendant charged with a felony and defense counsel if (a) the court is aware of the conflict or (b) it is brought to the court's attention." *State v. Marshall*, 303 Kan. 438, 447, 362 P.3d 587 (2015). "In general, a conflict exists when an attorney is placed in a situation conducive to divided loyalties, . . . and can include situations in which the caliber of an attorney's services 'may be substantially diluted.' [Citations omitted.]" *Pfannenstiel*, 302 Kan. at 758.

Whether the district court adequately discharges its duty to inquire into a potential conflict of interest is reviewed for an abuse of discretion. *State v. McDaniel*, 306 Kan. 595, 606, 395 P.3d 429 (2017).

"The duty of inquiry may lead a district court to abuse its discretion in three ways: (1) When the district court becomes aware of a potential conflict of interest but

6

fails to inquire at all, which is a decision based on an error of law—the error being the district court's failure to fulfill a legal duty; (2) when the court is aware of the conflict, proceeds to investigate, but fails to conduct an appropriate inquiry; and (3) when the court, after being aware of the conflict, conducts an appropriate inquiry into the defendant's expression of dissatisfaction with counsel but commits an abuse of discretion in deciding whether to substitute counsel." 306 Kan. at 606-07.

*Discussion*

*Duty to inquire*

The Kansas Supreme Court has stated "[w]hen a defendant asserts alleged deficiencies in counsel's performance during plea negotiations as the basis for a motion to withdraw plea, a district court must inquire further into the alleged conflict." *State v. Prado*, 299 Kan. 1251, 1258, 329 P.3d 473 (2014). In *Prado*, the court held that the district court was required to inquire into a potential conflict of interest when the defendant argued his attorney did not adequately explain the charges against him or the implications of the plea agreement prior to making a plea agreement. 299 Kan. at 1258-59. The court explained such statements put the district court on notice that "Prado potentially was forced to argue his motion without conflict-free counsel." 299 Kan. at 1258. Similarly, in *State v. Sharkey*, 299 Kan. 87, 98, 322 P.3d 325 (2014), the court held that the district court was required to inquire into a potential conflict of interest when the defendant filed a pro se motion for a new trial alleging his counsel was ineffective.

The State argues the district court's duty to inquire into a possible conflict was not triggered because any conflict was not readily apparent and Lampson did not advocate against Kebert's position that he was ineffective. But Kebert's pro se motion did not hide the claim of conflict, leaving it to be deduced from context—it specifically said "Defendant believes that Counsel was inneffective [*sic*] in that a motion to dismiss should have been pursued."

7

"Under the Sixth Amendment, an actual conflict of interest occurs when a counsel's divided loyalties adversely affect counsel's performance." *State v. Toney*, 39 Kan. App. 2d 1036, 1042, 187 P.3d 138 (2008). To effectively represent Kebert on his motion to withdraw the pleas and dismiss, Lampson would have been obligated first to investigate the merits of his client's claims regarding his own ineffectiveness, then objectively evaluate the findings, and finally argue such merits as he discovered. To defend himself against Kebert's claims of ineffectiveness, Lampson would have been required to advocate against his client's position.

As happened in *Sharkey*, Lampson did not argue his own ineffectiveness as alleged in the pro se motion, nor did he seek to withdraw so Kebert could be represented by conflict-free counsel at the motion hearing. On its face, Lampson's position was complicated, if not untenable. As a result, the district court should have been aware that Lampson's continued representation after Kebert's pro se motion would place Lampson in that conflicted position, triggering the district court's duty to inquire into the nature of the conflict. The district court abused its discretion when it failed to inquire about the potential conflict of interest.

*Remedy*

Our determination of error requires us to consider what, if any, remedy is required. *McDaniel*, 306 Kan. at 607. Kebert argues we should find Lampson was constitutionally ineffective in waiving his IAD right to a speedy trial and he asks us vacate his sentences. Alternatively, he contends remand is appropriate for further findings to allow review of his ineffectiveness claim.

"Ordinarily, when a district court abuses its discretion by failing to further inquire about an alleged conflict of interest, 'the appropriate remedy, in the absence of a suitable record on appeal concerning the alleged conflict of interest, is to remand to the

8

trial court for a determination of whether the defendant can "establish that the conflict of interest adversely affected his counsel's performance."' [Citations omitted]." *Prado*, 299 Kan. at 1260.

The Kansas Supreme Court has adopted the three classifications of ineffective assistance of counsel claims identified in *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). The first category includes claims that an attorney's performance was deficient to the point a defendant was denied a fair trial; the second category consists of those cases when the "assistance of counsel has been denied entirely or during a critical stage of the proceeding"; and the third applies to situations when a defendant's attorney "actively represented conflicting interests." *State v. Galaviz*, 296 Kan. 168, 181-82, 291 P.3d 62 (2012) (quoting *Mickens*, 535 U.S. at 166).

The third category is further divided into three subgroups, which our Supreme Court has referred to as: "(1) the automatic reversal exception, (2) the adverse effect exception, and (3) the *Mickens* reservation." *McDaniel,* 306 Kan. at 608. The three conflicting interest subcategories require the defendant to establish his or her attorney had an active conflict of interest. In the first two subgroups, the alleged conflict is related to an attorney engaging in multiple, concurrent representations. The third subgroup involves cases of successive representation or conflicts related to an attorney's personal or business interests. *Galaviz*, 296 Kan. at 182.

This case falls within the third category, as Kebert alleges his counsel actively represented conflicting interests. And because this case involves an alleged conflict of Lampson's personal or business interests, as opposed to concurrent representation, it is within the third subgroup—the *Mickens* reservation. The test to determine whether a defendant is entitled to relief in *Mickens* reservation cases was left open by the United States Supreme Court in *Mickens*. *Galaviz*, 296 Kan. at 184. Our Supreme Court has explained:

9

"[O]ne of two standards would apply. The first is the *Strickland* [*v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] standard, under which relief would not be granted unless the defendant could demonstrate both that the attorney's performance was deficient and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

"The alternative is the *Cuyler* [*v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d. 333 (1980)] standard used in the adverse effect exception. Under the *Cuyler* test, the defendant must demonstrate counsel labored under an active conflict of interest that affected the adequacy of the representation. This test differs from the *Strickland* standard in that 'prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown.' [Citations omitted.]" *McDaniel*, 306 Kan. at 610.

Without discussion, the Kansas Supreme Court has applied the adverse effect exception to cases that fall within the *Mickens* reservation subcategory. See, e.g., *Prado*, 299 Kan. at 1260; *Boldridge v. State*, 289 Kan. 618, 627-28, 215 P.3d 585 (2009). In this case, the adverse effect measure is the one proposed by the State in the event of remand. See *Galaviz,* 296 Kan. at 192. Our next step, therefore, is to consider the facts in the record to see if they are sufficient to allow us to assess whether Lampson's active conflict of interest had an adverse effect on his representation.

The record does show that the State, at the December 29, 2015 hearing, mentioned the need to set Kebert's case for trial and raised the 180 day IAD deadline as a scheduling consideration. The following month, when the State asked for a three-week continuance to prepare for the preliminary hearing, Lampson objected on Kebert's behalf, asked that the time be charged to the State if the court granted the request, and noted Kebert was in the county on a 180-day writ. The State's representative at that hearing made only a very oblique reference to the IAD, describing the case as "returned back to this court, I believe, on a—I want to say it was on a—on a detainer." However, he then incorrectly told the court that "I don't think speedy trial will come into effect yet until he's been arraigned."

10

The next significant scheduling involvement after those affirmative, if unspecific, recognitions of a time constraint, was immediately after the preliminary hearing on February 9, 2016, when the district judge and counsel set the date for trial. Neither party commented about IAD compliance or the number of days that would have elapsed between the time they then believed the IAD request was filed and the dates they considered. Although Lampson told the court his client would like to get the case taken care of, he nonetheless considered dates in June 2016 before citing the desire for an earlier date since Kebert was "going to remain in custody." The parties and court then settled on May 12-13, 2016, for the trial.

Two months later, on April 12, 2016, Lampson asked for the trial to be moved either to an earlier or later date because of his schedule and told the court "[my] client is in custody on another case so speedy trial is not an issue." The court moved the trial to May 18-19, 2016.

Eventually, after Kebert's pro se motion, Lampson followed with his assertion that the 180-day IAD limit had expired a day before Kebert pled. Then, in an amended motion to dismiss filed July 18, 2016, Lampson claimed—apparently for the first time—that the State and the court clerk actually had received Kebert's IAD request on August 19 and August 21, 2015, respectively, considerably altering the calculation of the date by which Kebert should have been brought to trial. The State responded with the argument that Lampson had waived Kebert's right to assert the IAD deadline by accepting a trial date outside 180 days.

The record lacks the facts that are needed to assess whether Lampson's conflict had an adverse effect on his representation. For example, the record does not show when the evidence of the August filing dates became known, how it became known, whether it reliably establishes the filing date, and whether it could or should have been known before. Likewise, the record is silent on Lampson's awareness of the IAD time limit as

11

applied to this case and how it factored into his representation of Kebert. Other questions no doubt would be identified as these and other issues are fully explored. We simply do not have a sufficient record to review Kebert's claim of ineffective assistance.

The case, therefore, must be remanded to the district court. In view of the nature of the claims, upon return of the case to the district court, conflict-free counsel should be appointed to represent Kebert at a rehearing on the amended motion for withdrawal of pleas and dismissal and on Kebert's claim that Lampson's conflicted position adversely affected his performance. See *State v. Brown*, 300 Kan. 565, 578, 331 P.3d 797 (2014); *State v. Vann*, 280 Kan. 782, 791-92, 127 P.3d 307 (2006).

Reversed and remanded for further proceedings in accordance with this opinion.