Phillip HAMM *v.* STATE of Arkansas

CR 05-676                                                232 S.W.3d 463

Supreme Court of Arkansas

Opinion delivered March 16, 2006

[Rehearing denied May 4, 2006.*]

---

* HANNAH, C.J., and GLAZE, J., would grant rehearing.

*Hartsfield, Almand, & Denison, PLLC,* by: *Larry J. Hartsfield* and *Rebecca J. Denison,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Clayton K. Hodges,* Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Justice. Appellant Phillip Hamm was convicted of the rape of M.C., a minor, by a jury in the Faulkner County Circuit Court. The Arkansas Court of Appeals reversed the decision of the trial court and remanded for a new trial, ruling that the testimony of a witness for the State had been improperly admitted under the "pedophile exception" to Ark. R. Evid. 404(b). See *Hamm v. State,* 91 Ark. App. 177, 209 S.W.3d 414 (2005). We granted the State's petition for review pursuant to Ark. Sup. Ct. R. 2-4 (2005). We find no error and affirm the decision of the circuit court.

Although his only child is an adult living in another state, Phillip Hamm often worked with children at his church, serving at times as a Sunday school teacher and as an adult supervisor at church functions. Through that association he met the victim, M.C., a nine-year-old girl, and often invited her, her brother, and other children to his home. At times M.C.'s mother asked Hamm to babysit for her. He entertained M.C. while she was at his home by providing various recreational activities, including video games, television, movies, four-wheeler rides, and fishing. In March, 2002, two girls, N.C. and M.C., who had been frequent guests in the appellant's home, reported that he had initiated sexual contact with them during their visits. Both girls gave interviews to a state police investigator detailing their experiences with Hamm.

The appellant was originally charged with one count of sexual assault for each girl. The cases were severed, and following a second interview in which M.C. made allegations of digital vaginal penetration by Hamm, this charge was amended to rape. A Faulkner County Circuit Court jury acquitted the appellant in a trial for the sexual assault of N.C. At his subsequent trial for the rape of M.C., N.C. was allowed to testify about her experiences with the appellant. Another witness, Robbie Sullivan, testified that she had observed the appellant at a church function lying on his back on an air mattress, holding a little girl astraddle his pelvic area. Both witnesses' statements were admitted pursuant to the "pedophile exception" to Ark. R. Evid. 404(b). The appellant was convicted of rape and sentenced to seventeen years in the Arkansas Department of Corrections.

When we grant a petition for review, we treat the appeal as if it were originally filed in this court. Thus, we review the circuit court's judgment, not that of the court of appeals. *Elser v. State,* 353 Ark. 143, 114 S.W.3d 168 (2003).

## I. *Directed Verdict*

The third point on appeal is: *The trial court abused its discretion when it failed to grant a directed verdict in favor of the defense based on the insufficiency of the evidence where the testimony as to the alleged acts were made as the result of leading questions by the investigator of the child which was otherwise vague and conflicting and there was significantly conflicting testimony by the witnesses at trial concerning the facts.*

The fourth point on appeal is: *The trial court abused its discretion when it failed to grant a directed verdict in favor of the defense where the State failed to adduce any evidence that the appellant engaged in sexual contact with M.C. during the time alleged in the felony information from December 2001 through February 2002.*

The appellant asserts that the trial court erred by denying his motions for a directed verdict because the testimony of the victim was evidence insufficient to justify his conviction, and because the State failed to offer proof that the crimes occurred within the temporal parameters alleged in the felony information. Because the appellant's claims based on the denial of a directed verdict implicate his right to be free from double jeopardy, we consider them first, although they are his third and fourth points on appeal. *Cluck v. State,* 365 Ark. 166, 226 S.W.3d 780 (2006). A motion for a directed verdict is treated as a challenge to the sufficiency of the

evidence. *Coggin v. State,* 356 Ark. 424, 156 S.W.3d 712 (2004). This court has long held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

■ Arkansas Rule of Criminal Procedure 33.1 states: In a jury trial, if a motion for a directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution, and at the close of all the evidence. Here, the appellant did not renew his motion for a directed verdict after the presentation of his sub-rebuttal evidence, which was the last evidence submitted. This constituted a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. *Holmes v. State,* 347 Ark. 689, 66 S.W.3d 640 (2002). Thus, his directed verdict claims, points three and four on appeal, are procedurally barred.

## II. *Pedophile Exception to 404(b)*

The first point on appeal is: *The trial court abused its discretion when it allowed the State to present the testimony of N.C. under Arkansas Rule of Evidence 404(b) because it was more prejudicial than probative as the alleged touching of her by the defendant was of a non-sexual nature whereas the alleged acts reported by M.C., the victim for which the appellant was being tried for rape, were sexual in nature.*

The appellant asserts that the trial court's admission of the testimony of N.C. was an abuse of its discretion because appellant's conduct towards N.C. was of a non-sexual nature, in contrast to his conduct with M.C. The cases cited by the State, such as *Smallwood v. State,* 326 Ark. 813, 935 S.W.2d 530 (1996), stand for the acknowledged proposition that once a defendant refers to a subject during direct examination, he opens the door for the prosecution to bring up the matter during cross-examination.

Here the trial judge originally granted appellant's motion in limine and excluded N.C.'s testimony, despite the pedophile exception. After Hamm stated during direct examination that he "never had and never would touch a female inappropriately," the trial judge reconsidered his ruling disallowing N.C.'s testimony,

and granted the State's motion to allow her testimony for purposes of rebuttal. Since N.C.'s testimony would ordinarily be inadmissible under Rule 404(b), the decisive question is whether it was within the trial court's discretion to admit N.C.'s testimony under the pedophile exception to that rule.

Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Hernandez v. State,* 331 Ark. 301, 962 S.W.2d 756 (1998). The list of exceptions set out in the rule is exemplary and not exhaustive. *White v. State,* 290 Ark. 130, 717 S.W.2d 784 (1986). Testimony is admissible pursuant to Rule 404(b) if it is independently relevant to the main issue, relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal or a bad person. *Mosley v. State,* 325 Ark. 469, 929 S.W.2d 693 (1996).

This court has recognized a "pedophile exception" to Rule 404(b), which allows evidence of similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Berger v. State,* 343 Ark. 413, 36 S.W.3d 286 (2001). The rationale for recognizing the exception is that such evidence helps to prove the depraved instinct of the accused. *Id.* The basis of the pedophile exception to Rule 404(b) is our acceptance of the notion that evidence of sexual acts with children may be shown, as that evidence demonstrates a particular proclivity or instinct. *Hernandez,* 331 Ark. 301, 962 S.W.2d 756 (1998). For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *See id.; Berger,* 343 Ark. 413, 36 S.W.3d 286. We also require that there be an "intimate relationship" between the perpetrator and the victim of the prior act. *Hernandez,* 331 Ark. at 308, 962 S.W.2d at 763; *Berger,* 343 Ark. at 421, 36 S.W.3d at 294. Some of our earlier cases seemed to hold that for the pedophile exception to

apply, the perpetrator and victim must reside in the same household. *See Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987). Other cases dealing with the pedophile exception either did not mention the household element, such as *Thompson v. State*, 322 Ark.586, 910 S.W.2d 694 (1995), or applied the exception to situations where the perpetrator did not live with the victim, as in *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994). In *Berger*, 343 Ark. 413, 36 S.W.3d 286, we explicitly rejected a requirement that the perpetrator and the victim must live in the same household, and in so doing we adopted the reasoning of the court of appeals in *Brewer v. State*, 68 Ark. App. 216, 6 S.W.3d 124 (1999), which was that the pedophile exception was applicable if the victim was under the authority of the perpetrator or in his care. *Berger*, 343 Ark. at 420, 36 S.W.3d at 293.

The appellant avers that N.C.'s testimony was inadmissible because it involved conduct of a non-sexual nature, pointing out that he only inserted his hand about an inch down N.C.'s pants. However, N.C.'s testimony was that the appellant put his hand inside her pants and rubbed her "butt" using an up and down motion, that she got an awkward feeling in her stomach, and that at some point she objected, whereupon the appellant stopped. N.C. testified that the appellant had her sit on him while she played games on his computer, and that she slept overnight at times on the same couch with the appellant, while his wife slept in their bedroom. N.C. also reported that she would "snuggle" with Hamm, that he told her that he loved her, that she was beautiful, and that she was his "little girlfriend."

In N.C.'s case, the appellant rubbed her buttocks beneath her clothing, while with M.C., he engaged in more extensive sexual activity, culminating in digital vaginal penetration. The similarities include: both children were female; both were nine years old when the abuse began; both met the appellant at church; both were under his supervision at church; both were frequently invited to his home; both were at times sitting on Hamm when the abuse occurred; both reported abuse while home alone with him; and, he was not related to either of them. Because of the numerous similarities between the two cases, we conclude that it was not a manifest abuse of discretion for the trial judge to admit N.C.'s testimony under the pedophile exception to Rule 404(b).

The second point on appeal is: *The trial court abused its discretion when it allowed testimony of non-sexual contact between N.C. and the appellant to be introduced into the appellant's trial for the rape of M.C. without allowing the defense to elicit testimony that the appellant had been acquitted of sexually assaulting N.C.*

The appellant asserts that the trial court abused its discretion by not allowing him to introduce evidence of his exoneration in his trial for the sexual assault of N.C.

When the appellant asked to admit his judgment of acquittal, the trial court said:

> If I allow the evidence of the other trial to come in, then that is going to leave both parties to argue what the jury meant by that which I don't think either one of you can do that because you don't know what the jury meant. They may have felt like what she said happened but what happened wasn't a criminal act. They may not have believed what she said, they may have believed — we don't know. The verdict in that case can cut both ways in this trial. It can be good for the defendant or it can be bad for the defendant for them to know.

We agree with the State that acquittal does not necessarily mean that the events described in N.C.'s testimony did not occur, a distinction which might be lost on some jurors. An acquittal does not equate with a finding of innocence or a finding that the complaining witness's testimony was false, but rather an acquittal means simply that the jury was not convinced beyond a reasonable doubt that the charges were true. *Hughes v. State*, 347 Ark. 696, 66 S.W.3d 645 (2002). Given these considerations, and the possibility of prejudice to both sides which a mention of the previous trial could have entailed, we cannot conclude that the trial court's exclusion of this evidence was a manifest abuse of discretion.

The sixth point on appeal is: *The trial court abused its discretion when it allowed the testimony of Robbie Sullivan of her personal opinion regarding an instance of appellant's presence around children at a church function where it reflected a subjective interpretation by her of an instance of non-sexual behavior as where it failed to reflect any clear evidence of sexual contact or misconduct and was thus more prejudicial than probative.*

The appellant asserts that the introduction of Robbie Sullivan's testimony constituted an abuse of discretion by the trial court

because the testimony reflected a subjective impression of non-sexual behavior, and failed to depict clear evidence of sexual contact or misconduct.

Initially, the appellant failed to abstract his objections to the introduction of Robbie Sullivan's testimony. The State argues that this failure precludes the appellant from contesting this issue on appeal. The State is correct in its contention that issues which are not abstracted by an appellant are not preserved for our review. *Baker v. State*, 363 Ark. 339, 214 S.W.3d 239 (2005). Ordinarily the State's argument would dispose of the sixth point on appeal, but this court allowed appellant to file a supplemental abstract indicating his objections to the introduction of Robbie Sullivan's testimony. Without further comment on the advisability or propriety of this decision, we proceed to a review of the merits.

M.C. testified that during several visits to the appellant's home, he touched her breasts through her clothes, fondled her breasts beneath her clothing, touched her vagina underneath her clothing, laid on top of her, and digitally penetrated her vagina. These acts occurred while the appellant and the victim were alone, and at times, when they were under a blanket in the presence of third parties. Occasionally the victim was seated on the appellant's lap when the abuse occurred, either while steering his car, or while inside his home.

The evidence which the State sought to admit under the pedophile exception to Rule 404(b) is the testimony of Robbie Sullivan, a witness who observed the appellant at a church lock-in and became concerned about his conduct. She observed the appellant lying on his back with an unidentified little girl straddling his pelvic area. Specifically, Sullivan testified as follows:

> Q: What did you observe in regard to the actions of the defendant, Mr. Hamm, and other children at that lock-in?
>
> SULLIVAN: During some unstructured time at the lock-in, the kids were pulling out their sleeping bags and kind of grouping off and Phillip pulled out a or had brought a air mattress, it was a full-size air mattress and I glanced over and he had a little girl on the air mattress with him and can I show you how she was being held?
>
> Q: Well, I don't want you to come down from the stand but you can demonstrate by standing or — if that is appropriate, Your Honor?

SULLIVAN: He was lying on the air mattress on his back and he had the little girl straddling his pelvic area and at that time I pulled the — [the youth minister], the youth minister aside and told him that it wasn't appropriate and I was very concerned.

Q: Did you observe anything else through that evening with regard to Mr. Hamm's conduct that caused you concern?

SULLIVAN: Yes. After I talked to [the youth minister] he said — he came back in and he separated the boys and the girls. They were all to watch a video and settle down. Phillip brought his air mattress over and a little girl named N.C. and one of her friends used the air mattress and he sat in a chair beside them until I went to sleep he was sitting in the chair beside them on the girl's side.

Q: Were there any other males present on the female's side?

SULLIVAN: Well, [the youth minister] was sitting on the edge just kind of watching all the kids and [the pastor], our pastor, was also there but they weren't really in the mix of the kids. They were kind of on the edge. Phillip was sitting beside them watching them.

There are similarities between the appellant's actions toward the victim and his actions toward the little girl at church. Both incidents involved female children. The victim was nine years old when the alleged abuse occurred, and the church incident involved a "little girl" of unspecified age. M.C. testified that Hamm had her sit on his lap, and Robbie Sullivan testified that Hamm held the little girl astraddle his pelvic area in an inappropriate manner. The appellant was acquainted with both children through his supervisory duties at his church.

In her interview with the state police investigator, the victim said that the appellant often encouraged children from the church to visit him at his home. There he entertained them in various ways, such as video games and fishing, four-wheeling, and other outdoor activities. The State argues that these recreational activities served to lure children into his home, to keep them coming

back, and were thus used by the appellant to develop their friendship and trust, culminating in incidents of sexual abuse. Similarly, the appellant came to the church lock-in, which was an activity for children. He brought his air mattress, a magnet for children who had brought their sleeping bags. There he held the little girl on the mattress in an inappropriate position, straddling his pelvic area.

The appellant asserts that what occurred at the lock-in between the appellant and the little girl was non-sexual conduct. As the State points out, the conduct in question could constitute the sexual act of "frottage." Frottage is defined as: "The act of rubbing against the body of another person . . . to attain sexual gratification." *The American Heritage Dictionary of the English Language* (4th Ed. 2000). What Robbie Sullivan saw could be interpreted as a rubbing against the body of another to attain sexual gratification, and thus it could be defined as frottage, which is a sexual act. We agree with the dissent to the denial of petition for rehearing in the Court of Appeals, "There is nothing innocent about an adult male lying on his back and having a young girl straddle him, even when they are fully clothed, so that their pelvic regions are in contact." *Hamm v. State*, 91 Ark. App. 177, 209 S.W.3d 414 (2005) (dissenting opinion on denial of rehearing).

The contact between the appellant and the little girl described by Robbie Sullivan involved a fifty-year-old man who was a Sunday school teacher and a church worker. It occurred at a lock-in, a church function where there were sure to be children, but at which no children of the appellant's were in attendance. There he held a little girl of unspecified age in an inappropriate manner, straddling his pelvic area.

In comparing his relationships with these two girls, the appellant initially contacted M.C. and the unidentified little girl through his association with the church. Both girls were approximately of the same age, one was nine years old and the other was a "little girl." The initial contacts occurred at church, viewed by the children and their parents as a safe place where there were safe adults. As a supervisor of children at the church function, the appellant stood in a fiduciary relationship to the little girls, vested with a presumption of trust and confidence by virtue of that association. The appellant babysat M.C. and was often the sole adult responsible for her care, and he was also acting in a supervisory capacity when he encountered the little girl at the lock-in. The appellant was an adult who was there to supervise the

children, thus he stood in a position of authority or control *vis-a-vis* the unidentified little girl. The appellant also touched the vaginal areas of M.C. and the little girl. M.C. testified that Hamm touched her vaginal area in the manner already described, and Robbie Sullivan testified that the little girl was being "held" and that Hamm "had" the little girl straddling his pelvic area in an inappropriate way.

While there are differences between the contact that the appellant had with M.C. and the contact he had with the unidentified "little girl," in cases such as *Hernandez*, 331 Ark. 301, 962 S.W.2d 756, and *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005), we have recognized that the sexual acts admitted pursuant to the pedophile exception need not be identical to the abuse suffered by the present victim. In *Hernandez* we said, "[T]he pedophile exception seems especially applicable in view of the evidence that Mr. Hernandez was attracted to the physical characteristics of young girls." *Hernandez*, 331 Ark at 308, 962 S.W.2d at 760. Hamm's conduct in frequently inviting young girls to his home while he was there alone, and his conduct at the lock-in, first in the incident on the air mattress, then sitting beside the little girls watching them, at least, until Robbie Sullivan fell asleep, is also evidence that the appellant was attracted to the physical characteristics of young girls. This evidence, considered in conjunction with Hamm's actions toward the girls, likewise makes the pedophile exception applicable in this case. Based on the facts of this case and the extant case law, we cannot conclude that the trial court manifestly abused its discretion in holding that the act described by Robbie Sullivan was relevant to show that the appellant was possessed of a depraved sexual instinct and had a proclivity for molesting young girls.

If evidence of past behavior is not admissible under the pedophile exception, it is still admissible if it is independently relevant to prove motive, intent, preparation, or plan. Robbie Sullivan's testimony is relevant to show the appellant's plan to meet children at church, to invite them back to his home, to keep them returning by offering them treats and entertainment, then to proceed to molest them. In the cases of M.C. and N.C., the appellant first contacted the girls at church, then invited them to visit his house, where he molested them. With the little girl described in Robbie Sullivan's testimony, the contact at the lock-in could reasonably be seen as a prelude to the same pattern as

existed in the prior two cases, i.e., meeting a young girl at church, a presumably safe environment, generating a close friendship with her, inviting her into his home, and then molesting her. When the appellant attended the lock-in, he brought a full-size air mattress, something that would presumably be attractive to children. Subsequent to the contact with the "little girl" described by Robbie Sullivan, and even after the boys and girls were separated, he contrived to place himself near the little girls throughout the night. Thus the testimony was relevant to show preparation or plan on the part of the defendant. For the foregoing reasons, we conclude that the trial court did not abuse its wide discretion in evidentiary matters by admitting the testimony of Robbie Sullivan.

### III. *Arraignment*

The fifth point on appeal is: *The trial court abused its discretion when it failed to receive a plea and failed to arraign the appellant on the amended charge of rape.*

The appellant asserts that the trial court's failure to formally arraign him on a charge of rape amounts to an abuse of discretion. Hamm was originally charged with second-degree sexual assault, but this was amended to a charge of rape on October 29, 2003, following the revelations concerning vaginal penetration by the victim. He was never formally arraigned on a charge of rape.

When a defendant appears and announces ready for trial, he waives formal arraignment. *Hill v. State*, 251 Ark. 370, 472 S.W.2d 722 (1971). A failure to arraign is not reversible error if the record shows that the defendant received every right he would have received if arraigned. *Hobbs v. State*, 86 Ark. 360, 111 S.W. 264 (1908). Here, the appellant was not prejudiced by the lack of a formal arraignment. He knew that he was being tried on a charge of rape, and he maintained that he was not guilty of that charge. He received the same rights at trial as he would have had he been arraigned. Thus, because the defendant waived formal arraignment by appearing and announcing ready for trial, and because he suffered no prejudice by not being arraigned, we affirm the decision of the trial court on this point.

### IV. *Transcript*

The appellant's seventh point on appeal is: *The trial court abused its discretion when it allowed the state to introduce the transcript of the state police interviews with M.C. which included parts of the statement that*

*were not introduced by the State especially where they were allowed to be introduced by the State giving the defense's cross-examination of the State's witness.*

The appellant contends that the trial court abused its discretion by admitting the transcripts of two interviews which M.C. gave to a state police investigator.

During the cross-examination of the investigator, appellant's counsel alluded to portions of the interview which he contended were examples of the investigator's exertion of influence to secure incriminating testimony from M.C. Arkansas Rule of Evidence 801(d)(1) allows the admission of evidence that would otherwise be hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, the statement is consistent with her testimony, and is offered to rebut an express charge of recent fabrication or improper influence. Also, Ark. R. Evid. 106 states: Whenever a writing or recorded statement or part thereof is introduced by a party, any adverse party may require him at that time to introduce any other writing or recorded statement which in fairness ought to be considered contemporaneously with it.

The purpose of this rule is to prevent the jury from taking a statement out of context. *Skiver v. State*, 37 Ark. App. 146, 826 S.W.2d 309 (1992).In the present case, while attempting to show that the investigator coaxed or cajoled M.C. into giving incriminating testimony, the defense expressly referred to selective portions of the interviews. Thus, the entire transcript of the two interviews was properly admitted to refute a charge of improper influence and to provide context, and we therefore affirm the decision of the trial court on this point as well.

Affirmed.

HANNAH, C.J., and GLAZE, J., dissent.

JIM HANNAH, Chief Justice, dissenting. I respectfully dissent. I believe the circuit court abused its discretion in admitting Robbie Sullivan's testimony pursuant to Ark. R. Evid. 404(b), and for that reason, I would reverse and remand for a new trial. The record reflects the following testimony:

Q. What did you observe in regard to the actions of the defendant, Mr. Hamm, and other children at that lock-in?

A. During some unstructured time at the lock-in, the kids were pulling out their sleeping bags and kind of grouping off and Phillip pulled out or had brought a[n] air mattress, it was a full size air mattress and I glanced over and he had a little girl on the air mattress with him and can I show you how she was being held?

Q. Well, I don't want you to come down from the stand but you can demonstrate by standing or — if that [is] appropriate, Your Honor?

A. He was lying on the air mattress on his back and he had the little girl straddling his pelvic area and at that time I pulled the . . . youth minister aside and told him that it wasn't appropriate and I was very concerned.

Rule 404(b) provides:

(b) *Other Crimes, Wrongs, or Acts*. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This court has recognized a "pedophile exception" to Rule 404(b), where the court has approved allowing evidence of similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Flanery v. State,* 362 Ark. 311, 208 S.W.3d 187 (2005). The rationale for recognizing this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Id.*

The majority claims that Ms. Sullivan's testimony about what she observed at the lock-in is admissible under the pedophile exception due to the similarities between Hamm's actions toward M.C. and his actions toward the little girl at the church. I am unable to join the majority because the record in this case does not reflect those similarities. Rather, the majority's basis for the admission of the testimony is based upon an erroneous recitation of facts and a mischaracterization of the evidence.

The majority finds the following similarities: (1) both incidents involved female children; (2) M.C. was nine years old when the alleged abuse occurred, and the church incident involved a "little girl" of unspecified age; (3) M.C. testified that Hamm had

her sit on his lap, and Ms. Sullivan testified that Hamm held the little girl astraddle his pelvic area; and (4) Hamm was acquainted with both children through his supervisory duties at church.

These so-called similarities simply do not show a proclivity for a specific act with a person or a class of persons with whom Hamm has an intimate relationship. Here, M.C. testified that Hamm touched her breasts and pubic area and digitally penetrated her vagina during her visits to his house. Ms. Sullivan's testimony revealed that she observed an unidentified little girl sitting astraddle of Hamm's pelvic area while he was lying down.

In *Swift v. State*, 363 Ark. 496, 215 S.W.3d 619 (2005), we held that the evidence of sexual abuse of the appellant's adopted daughter and niece, both close familial relationships, showed a proclivity for that kind of conduct that would be relevant to the alleged rape of his son. We further noted that the two girls and the son were similar in age when the abuse happened, and in each instance, the appellant instructed the child not to tell anyone about the abuse.

In *Flanery, supra*, the victim testified that inappropriate contact with the appellant progressed from hugging and kissing to inappropriate touching of her breasts, to touching her vagina, and finally to oral sex and sexual intercourse. She further testified that, after the inappropriate contact, the appellant would apologize. The appellant argued that the testimony of his daughter concerning alleged inappropriate contact was inadmissible. She testified that her father asked her to lay on her stomach, and then proceeded to put his hands inside her clothing and rub her buttocks, as well as touch her vaginal area outside her clothing. Once the inappropriate touching had concluded, the appellant's daughter was told not to tell her mother. We stated:

> Here, though the specific acts complained of are not identical, the victim and the witness were similar in age when the abuse happened. Further, both girls were living in the home of the appellant and looked on him as a father figure at the time of the abuse. In each case, the appellant attempted to rationalize his behavior in some way. Moreover, both girls testified to inappropriate touching of the vaginal area. In light of the similarities in age and presence of the victims in the same household, we hold that the circuit court did not abuse its discretion in allowing Amanda's testimony.

*Flanery*, 362 Ark. at 315, 208 S.W.3d at 190; *see also Fry v. State*, 309 Ark. 316, 829 S.W.2d 415 (1992) (affirming trial court's decision to

admit a witness's testimony of sexual abuse to show a pattern of behavior by the appellant and noting that the abuse began when both the victim and the witness were approximately nine years old and progressed from fondling to intercourse).

The majority likens the conduct observed by Ms. Sullivan to an act of sexual abuse, even though Ms. Sullivan did not testify that she observed an act of sexual abuse. Nor did Ms. Sullivan ever testify that, while holding the little girl, Hamm was rubbing against her. As such, the majority's finding that the jury might have believed that Hamm was engaging in frottage with the little girl is wholly improper.[1]

Further, I disagree with the majority's determination that even if Ms. Sullivan's testimony is not admissible under the pedophile exception, it is still admissible because it is independently relevant to prove motive, intent, preparation, or plan. The majority states that "[w]ith the little girl described in Robbie Sullivan's testimony, the contact at the lock-in could be seen as a prelude to the same pattern as existed in the prior two cases, i.e., meeting a young girl at church, a presumably safe environment, generating a close friendship with her, inviting her into his home, and then molesting her." The use of the phrase "could reasonably be seen as a prelude" shows that the majority's conclusion is based purely upon speculation and conjecture. Absolutely no evidence was introduced that the little girl at the lock-in was ever at Hamm's residence or that she was ever molested by Hamm. Consequently, Ms. Sullivan's testimony was simply evidence of another act that was admitted to prove the character of Hamm in order to show that he acted in conformity therewith. Evidence of this type is prohibited by Rule 404(b). Ms. Sullivan's testimony did not provide proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident concerning the rape of M.C.; therefore, it was inadmissible. Because I believe that this erroneously admitted evidence was prejudicial to Hamm, I would reverse and remand this case.

GLAZE, J., joins.

---

[1] The State's assertion that Hamm might have been engaging in frottage was never presented at trial. Nor was it presented in the State's original brief on appeal. It was not until the filing of its supplemental brief that the State put forth the theory that what Ms. Sullivan described appeared to be the sexual act known as frottage.