

# SUPREME COURT OF ARKANSAS

**No.** CR–15–813

| | | |
|---|---|---|
| PHILLIP FLOYD | APPELLANT | **Opinion Delivered:** June 23, 2016 |
| V. | | APPEAL FROM THE CARROLL COUNTY CIRCUIT COURT [CR2015-136] |
| STATE OF ARKANSAS | APPELLEE | |
| | | HONORABLE C. SCOTT JACKSON, JUDGE |
| | | <u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Phillip Floyd appeals from the Carroll County Circuit Court's order disqualifying his lawyer, Gerald K. Crow, because Crow had previously served in a judicial capacity in the criminal proceedings. Because we agree that Crow's participation in the case was personal and substantial, we affirm the circuit court's order removing him as Floyd's counsel.

The appeal in this case stems from the underlying criminal charges against Floyd for one count of rape. On August 5, 2014, when Crow was a circuit judge, he authorized the issuance of an arrest warrant for Floyd. On October 6, 2014, the State filed charges against Floyd, and on October 15, 2014, Crow presided over Floyd's plea-and-arraignment hearing. At that hearing, Floyd was represented by Brian Rabal. Floyd entered a plea of not guilty, and Crow set the trial for July 15, 2015. Crow left his position as circuit judge on December 31, 2014.

On July 21, 2015, Crow entered an appearance as an attorney for Floyd, and on July 22, 2015, he filed a waiver of conflict signed by Floyd. On July 27, 2015, Rabal filed a motion to withdraw as counsel, noting that Floyd had "terminated his relationship with counsel and ha[d] retained the services of Gerald K. Crow to represent him in this matter."

On July 28, 2015, the circuit court held a hearing, and the State made a motion to disqualify Crow based on his former participation in the case as a judge. The State argued that Crow's acts of signing the affidavit of probable cause for the arrest warrant and presiding over Floyd's plea-and-arraignment hearing constituted substantial participation in the case, and consequently Rule 1.12 of the Arkansas Rules of Professional Conduct disqualified Crow from the representation unless both parties gave written, informed consent. The State refused to give its consent. Floyd argued that the rule did not apply because the acts were not substantial in that they were administrative or ministerial and did not affect the merits of the case. The circuit court ruled that Crow was prohibited from representing Floyd, and Floyd has appealed from that order. This appeal is proper as an interlocutory appeal from an order disqualifying counsel. *Samontry v. State*, 2012 Ark. 105, 387 S.W.3d 178. We review a circuit court's decision to disqualify an attorney under an abuse-of-discretion standard. *Id.*

The circuit court found that Crow was disqualified pursuant to Rule 1.12 of the Arkansas Rules of Professional Conduct, which states, "[A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing." The circuit court found that Crow had participated substantially in

the case by signing the affidavit for arrest and presiding over the plea and arraignment hearing, and that although Floyd had given written consent, the State refused to do so. Floyd argues that the circuit court abused its discretion in disqualifying his lawyer because Crow's participation was not substantial as it did not affect the merits of his case, and accordingly, the State's consent was not required.

Our caselaw is clear that the bar for disqualifying a lawyer is high because "[a] litigant, of course, is entitled to counsel of its own choosing." *Saline Memorial Hosp. v. Berry*, 321 Ark. 588, 906 S.W.2d 297 (1995). We have stated that disqualification is a drastic measure to be imposed only where clearly required by the circumstances. *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990). As we stated in *Burnette*, "We must never forget that a disqualification, though aimed at protecting the soundness of the attorney–client relationship, also interferes with, or perhaps destroys, a voluntary relationship by depriving a litigant of counsel of his own choosing—oftentimes affecting associations of long standing." *Id.* at 155, 794 S.W.2d at 148. However, we have also recognized that "the presumption in favor of a party's choice of counsel may be overcome by the demonstration of an actual conflict of interest or by a showing of a serious potential for conflict." *Samontry*, *supra*.

We have held that the Arkansas Rules of Professional Conduct apply to disqualification proceedings. *Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270 (1998). Rule 1.12 states that a lawyer is precluded from representing anyone in a matter in which the lawyer participated "personally and substantially" as a judge.[1] Rule 1.0 states, "'Substantial' when

---

[1]In his concurring opinion, Chief Justice Brill argues that the more tenuous "appearance of impropriety" standard applies in this case. However, because Rule 1.12(a)

used in reference to degree or extent denotes a material matter of clear and weighty importance." The comments to Rule 1.12 provide additional guidance, indicating that a judge is not precluded from representation if the judge's previous participation was a "remote or incidental administrative responsibility that did not affect the merits." Ark. R. Prof'l Cond. 1.12 cmt 1.

In this case, Crow's participation in issuing the arrest warrant and presiding over the plea and arraignment hearing was substantial because both qualify as matters of clear and weighty importance. To issue the arrest warrant, Crow was required to determine that the affidavit in support demonstrated reasonable grounds that Floyd had committed the offense in question. Ark. Code Ann. § 16-81-104 (Repl. 2005). When a judge wholly fails to undertake an analysis of whether the affidavit establishes reasonable cause for the arrest, the arrest warrant is invalid. *See, e.g.*, *Stewart v. State*, 289 Ark. 272, 711 S.W.2d 787 (1986). Thus, contrary to Floyd's assertion, the issuance of the arrest warrant was not a mere remote or incidental administrative responsibility; rather, Crow was required to weigh the merits in his consideration of the affidavit.

Similarly, Crow's participation as the judge in the plea-and-arraignment hearing is a matter of clear and weighty importance and cannot be considered merely an administrative responsibility. We have held that a criminal defendant has a right to an arraignment hearing. *Hamm v. State*, 365 Ark. 647, 232 S.W.3d 463 (2006). Additionally, Crow was required to

---

is a specific provision addressing the precise factual scenario at issue here, that provision governs over any more general principles. *See, e.g.*, *Kelly v. Martin ex rel. State*, 2014 Ark. 217, 433 S.W.3d 896.

act in his official judicial capacity in presiding over the plea-and-arraignment hearing — not in an administrative capacity. *See Mississippi Comm'n on Judicial Performance v. Atkinson*, 645 So. 2d 1331 (Miss. 1994) (lawyer's participation as a judge was substantial where the judge's action in his judicial capacity was required to perform the action); *see also Boldridge v. State*, 289 Kan. 618, 215 P.3d 585 (Kan. 2009) (holding that a lawyer was disqualified from representation in a criminal case when he had previously authorized the issuance of subpoenas for evidence used in the case).

As a final point, Floyd also argues that the State failed to establish any prejudice from Crow's representation; but as we have previously noted, the Rules of Professional Conduct do not require a finding of prejudice, and we have declined to adopt such a requirement. *Burnette*, 303 Ark. at 156, 794 S.W.2d at 148. Accordingly, the State was not required to establish any prejudice from Crow's representation of Floyd. Because Crow previously participated in the case personally and substantially as a judge, Rule 1.12 applies, and the State's consent was required before he could participate as a lawyer.[2] Thus, the circuit court did not abuse its discretion in disqualifying him from representation.

Affirmed.

BRILL, C.J., concurs.

BAKER and HART, JJ., dissent.

---

[2] We recognize Justice Baker's concern that the analysis in the instant case may impair a defendant's right to counsel of his choice. Notably, Floyd did not raise or develop any argument that Rule 1.12(a) imparted an unconstitutional restriction to his right to counsel. Accordingly, we do not address that issue in this opinion.

**HOWARD W. BRILL, Chief Justice, concurring.** I concur with the majority, but write to express an additional reason for the result.

The first generally recognized ethical standards for lawyers were the Canons of Professional Ethics. Adopted by the American Bar Association in 1908 and later approved by the Arkansas Supreme Court, the forty-seven Canons governed Arkansas lawyers until 1970. After the American Bar Association approved the Model Code of Professional Responsibility, this court adopted that Code as the new governing standard for Arkansas attorneys. *See In re Standards of Prof'l Conduct of Atty's at Law*, No. 69-5161 (Ark. Feb. 23, 1970) (per curiam); *see also* Edward L. Wright, *The Code of Professional Responsibility: Its History and Objectives*, 24 Ark. L. Rev. 1 (1970). Expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public and with the legal system, Canon 9 of the Code stated, "A lawyer should avoid even the appearance of impropriety."

In 1983, as criticism of the Code increased, the American Bar Association approved a significantly different approach in the Model Rules of Professional Conduct. The Model Rules, as amended, were adopted by this court, to be effective January 1, 1986. *See In re Ark. Bar Ass'n: Petition for the Adoption of Model Rules of Prof'l Conduct*, 287 Ark. 495, 702 S.W.2d 326 (1985) (per curiam). Significantly, the rules excluded any reference to the appearance-of-impropriety concept. *See id*. The concern of the drafters was that this concept was too imprecise to give guidance to attorneys and too vague to be a basis for professional discipline.

However, the appearance-of-impropriety standard was resurrected in *First American Carriers, Inc. v. Kroger Co.*, 302 Ark. 86, 787 S.W.2d 69 (1990).[3] The principle of avoiding the appearance of impropriety was forcefully reasserted in *Burnette v. Morgan*, 303 Ark. 150, 156, 794 S.W.2d 145, 148 (1990): "[The principle] is a rock in the foundation upon which[are]built the rules guiding lawyers in their moral and ethical conduct. This is a factor that should be considered in *any* instance where a violation of a rule of professional conduct is at issue." Subsequent decisions affirmed that the principle is applicable in disqualification matters. *See Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270 (1998); *McAdams v. Ellington*, 333 Ark. 362, 970 S.W.2d 203 (1998); *Berry v. Saline Mem'l Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995).

Accordingly, when the next major revision of the ethical standards was undertaken, the drafting committee of the Arkansas Bar Association recommended that the principle be codified by expressly placing it in the official comments. This court approved that recommendation when it adopted the new Arkansas Rules of Professional Conduct effective May 1, 2005. *See In re Ark. Bar Ass'n—Petition to Revise the Ark. Rules of Prof'l Conduct*, 361 Ark. App'x 451 (2005) (per curiam); Ark. R. Prof'l Conduct 1.7, cmt. 37 ("As an integral part of the lawyer's duty to prevent conflict of interests, the lawyer must strive to avoid not only professional impropriety, but also the appearance of impropriety."). Perhaps more significantly, the Preamble to the Arkansas Rules of Professional Conduct states that "[t]his obligation should be considered in any instance where a violation of the Rules of

---

[3] *See* David Ivers, *Note, Prohibition Against Appearance of Impropriety Retained under Model Rules of Professional Conduct*, 13 U. Ark. Little Rock L.J. 271 (1991).

Professional Conduct [is] at issue. The principle pervades these Rules and embodies their spirit." Ark. R. Prof'l Conduct pmbl., cmt. 13A.[4]

In this case, Judge Crow issued the arrest warrant, and he presided over the arraignment. For him to now represent the defendant would appear to a reasonable person to be improper. Our case law and our rules of professional conduct remind lawyers to be mindful of their duty to avoid even the appearance of impropriety. For all these reasons, I concur in the majority's decision to affirm the circuit court.

**KAREN R. BAKER, Justice, dissenting.** I must respectfully dissent from the majority's decision because the circuit court clearly abused its discretion in disqualifying Crow from the representation of Floyd. Specifically, the circuit court abused its discretion in finding that Crow substantially participated, as required for disqualification pursuant to Rule 1.12(a) of the Arkansas Rules of Professional Conduct, in the issuance of the arrest warrant and the plea-and-arraignment hearing.

With regard to the arrest warrant, the majority relies on Ark. Code Ann. § 16-81-104 and correctly states that "[t]o issue the arrest warrant, Crow was required to determine

---

[4] Sitting judges are under similar obligations, with restrictions that are arguably more stringent than those for attorneys. On the issue of the appearance of impropriety, Rule 1.2 of the Arkansas Code of Judicial Conduct states that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Comment 5 of Rule 1.2 states that "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." *See* Cynthia Gray, *Avoiding the Appearance of Impropriety: With Great Power Comes Great Responsibility*, 28 U. Ark. Little Rock L. Rev. 63 (2005).

that the affidavit in support demonstrated reasonable grounds that Floyd had committed the offense in question." However, despite the correctness of this statement, I am mindful of United States Supreme Court precedent regarding an issuing magistrate's involvement in the issuance of the arrest warrants:

> Pursuant to the United States Supreme Court's holding in *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S. Ct. 2119, 32 L. Ed. 2d 783 (1972), for a warrant to be valid, the issuing officer must meet two tests: "He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Id.* at 350, 92 S. Ct. 2119. The Court further explained that neutrality and detachment require "severance and disengagement from activities of law enforcement." *Id.* In addition, there must be a lack of "direct, personal, substantial, pecuniary interest" in the issuance of the warrant. *Connally v. Georgia*, 429 U.S. 245, 250, 97 S. Ct. 546, 50 L. Ed. 2d 444 (1977). If the issuing magistrate does not meet the constitutional mandate of being neutral and detached, the warrant is invalid. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

*Davis v. State*, 367 Ark. 341, 344–45, 240 S.W.3d 110, 112–13 (2006). Thus, despite the requirements of Ark. Code Ann. § 16-81-104, Crow was required to be "neutral and detached" and lack "direct, personal, substantial, pecuniary interest" in the issuance of the arrest warrant. Because Crow was required to be neutral and detached, his participation in the issuance of the arrest warrant was not substantial and the circuit court clearly abused its discretion by disqualifying Crow on this basis.

Further, I must also dissent from the majority's holding that Crow's participation as the presiding judge in the plea-and-arraignment hearing amounted to substantial participation and thus disqualified Crow from the representation of Floyd. The entirety of the plea-and-arraignment transcript is as follows:

[JUDGE CROW]:      All right. Phillip Floyd, CR2014-136. Mr. Floyd is present before the Court with Mr. Brian Rabal.

MR. RABAL:            That's correct, Your Honor.

[JUDGE CROW]:        All right. The State is appearing by Ms. Goodman. We're here today for purposes of arraignment. Mr. Floyd is charged with the offense of rape, a class Y felony.

And, Mr. Rabal, have you had the opportunity to review this matter with your client?

MR. RABAL:            I have, Your Honor.

[JUDGE CROW]:        Are you prepared to enter a plea today?

MR. RABAL:            We are.

[JUDGE CROW]:        And what says –

MR. RABAL:            My client – yeah, my client would like to plead not guilty.

[JUDGE CROW]:        All right. You've advised your client of the nature of the charges, his constitutional rights, and pleas available to him?

MR. RABAL:            I have, Your Honor.

[JUDGE CROW]:        All right. Not guilty will be entered. Is the State's file open?

MS. GOODMAN:        Yes, sir.

[JUDGE CROW]:        [Floyd] is currently free on $25,000 corporate surety bond. There is a no contact order in place with the alleged victim. Jury trial will be set for the week of July 15th, 2015 in Berryville.

Mr. Rabal, as you are probably aware, I am leaving the bench at the end of this year. Judge Jackson will be taking the Circuit Court. You will probably need to coordinate with the Prosecuting Attorney for the purposes of further proceedings and any preliminary hearings, including any suppression hearings that you may wish to conduct.

MR. RABAL:            Okay. I will do so, Your Honor.

| [JUDGE CROW]: | All right. Anything further then with regard to Mr. Floyd? |
| MS. GOODMAN: | No, sir. |
| [JUDGE CROW]: | All right. Thank you. |
| MR. RABAL: | Thank you, Your Honor. That concludes my business. May I be excused? |
| [JUDGE CROW]: | You may, sir. Thank you. |
| MR. RABAL: | Thank you. |

Thus, the record demonstrates that Floyd merely appeared in court, pled not guilty, and Crow set the jury trial for the week of July 15, 2015, in Berryville. Crow's participation in the plea-and-arraignment hearing, as the presiding judge, was far from substantial participation as contemplated by Rule 1.12(a) of the Arkansas Rules of Professional Conduct. Further, because Arkansas is a small state where—particularly in rural areas—only a limited number of attorneys are available, the majority's analysis restricts a defendant's right to counsel of his choosing unnecessarily and for no real purpose.

As the majority correctly states, "The presumption in favor of a party's choice of counsel may be overcome by the demonstration of an actual conflict of interest or by a showing of a serious potential for conflict." Here, the presumption in favor of Floyd's selection of Crow as his counsel has not been overcome by a demonstration of an actual conflict of interest or by a showing of a serious potential for conflict. Because the majority has erred in finding that Crow's participation in the arrest warrant and plea-and-arraignment hearing amounted to substantial participation, I must respectfully dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. The majority states the correct standard for determining the propriety of disqualifying a party's trial counsel. It simply fails to properly apply that standard to the facts before us.

The case law that the majority purports to rely on should have directed it down a different path. In *Saline Memorial Hospital v. Berry*, 321 Ark. 588, 906 S.W.2d 297 (1995), this court reversed a trial court's disqualification of counsel. We likewise reversed a circuit court's disqualification decision in *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990). Even in *Samontry v. State*, 2012 Ark. 105, 387 S.W.3d 178, which the majority cites for the proposition that "the presumption in favor of a party's choice of counsel may be overcome by the demonstration of an actual conflict of interest or by a showing of a serious potential for conflict," this court nonetheless held that the circuit court abused its discretion in disqualifying the trial counsel. Accordingly, the language in *Samontry* is merely dicta.

However, assuming that the *Samontry* dicta does offer some guidance to this court, it should compel us to reverse the circuit court's ruling. The State put on no evidence to demonstrate that Attorney Crow's prior service in the case as a judge created an "actual conflict of interest" or even "a serious potential for conflict." Merely asserting that then Judge Crow signed the arrest warrant and accepted Mr. Floyd's not-guilty plea proves nothing.

Under the Arkansas Rules of Criminal Procedure, the State has an extensive, affirmative duty to disclose to the defense almost all of the information that it has in its possession. Ark. R. Crim. P. 17.1. I am mindful that there are narrow exceptions

recognized by Rule 17.4 and 17.5, however, the State did not assert that any of these exceptions applied or that it had made then Judge Crow privy to that information.

Likewise, merely calling signing the arrest warrant and accepting Mr. Floyd's not-guilty plea "matters of clear and weighty importance" does not make them so. Regarding the arrest warrant, contrary to the majority's assertions, then Judge Crow was not required to "weigh the merits." Rather, pursuant to Arkansas Code Annotated section 16-81-104(a), the issuing judge or magistrate is required to issue an arrest warrant if, based on information given him under oath, he is "satisfied that there are reasonable grounds for believing the charge." This is a very low showing—section 16-81-104(a) does not require that the issuing judge or magistrate actually believe that the offense was committed, which would be closer to making a decision on the merits, but only that there are "reasonable grounds for believing the charge." Decisions on the "merits" are left to the trier of fact. The remote, administrative nature of issuing an arrest warrant is further shown by the fact that section 16-81-104 has reduced the process to filling out a form, which is included in the statute.[1]

---

[1]The State of Arkansas.

To any law enforcement officer of the State of Arkansas:

It appearing that there are reasonable grounds for believing that A.B. has committed the offense of larceny in the County of Pulaski, you are therefore commanded, forthwith, to arrest A.B., and bring him before some judge or magistrate of Pulaski County, to be dealt with according to law.

Given under my hand the _____ day of _____, 20__.

C.D.
Judge or Magistrate,
Summon as witnesses E.F. and J.K.

In the case before us, the affidavit for the arrest warrant recited the victim's statement, which contained details about the time and the place of the alleged incidents. The statement established all of the elements of the offense. The affidavit also stated that the victim had repeated the allegation to several named adults. Obviously, this information constituted a reasonable basis for believing the charge. Of course the "merits" will involve putting the victim before a trier of fact where the veracity of the accusation can be tested. Then Judge Crow took no testimony before signing the warrant. While I will not foreclose the possibility that there could be instances in which the involvement of the magistrate would be more extensive, that was not the situation in this case.

Likewise, the act of accepting Mr. Floyd's not-guilty plea was a remote administrative task. This is proven by the transcript of the proceeding:

THE COURT:    All right. Phillip Floyd, CR2014-136. Mr. Floyd is present before the Court with Mr. Brian Rabal.

MR. RABAL:    That's correct, Your Honor.

THE COURT:    All right. The State is appearing by Ms. Goodman. We're here today for purposes of arraignment. Mr. Floyd is charged with the offense of rape, a class Y felony.

And, Mr. Rabal, have you had the opportunity to review this matter with your client?

MR. RABAL:    I have Your Honor.

THE COURT:    Are you prepared to enter a plea today?

MR. RABAL:    We are.

THE COURT:    And what says—

MR. RABAL: My client – yeah, my client would like to plead not guilty.

THE COURT: All right. You've advised your client of the nature of the charges, his constitutional rights, and pleas available to him"

MR. RABAL: I have, Your Honor.

THE COURT: All right. Not guilty plea will be entered. Is the State's file open?

MS. GOODMAN: Yes, sir.

THE COURT: Mr. Rabal [sic] is currently free on a $25,000 corporate surety bond. There is a No Contact order in place with the alleged victim. Jury trial will be set for the week of July the 15th, 2015 in Berryville.

Mr. Rabal, as you are probably aware, I am leaving the bench at the end of this year. Judge Jackson will be taking the Circuit Court. You will probably need to coordinate with the Prosecuting Attorney for the purposes of further proceedings and any preliminary hearings, including any suppression hearings that you may wish to conduct.

MR. RABAL: Okay. I will do so, Your Honor.

THE COURT: All right. Anything further then with regard to Mr. Floyd?

MS. GOODMAN: No, sir.

THE COURT: All right. Thank you.

MR. RABAL: Thank you, Your Honor. That concludes my business. May I be excused?

THE COURT: You may, sir. Thank you.

MR. RABAL: Thank you.

Calling this brief colloquy "a matter of clear and weighty importance [that] cannot be considered merely an administrative responsibility" is intellectually dishonest.

The authority that the majority purports to rely on is nothing more than a smokescreen. It cites *Hamm v. State*, 365 Ark. 647, 232 S.W.3d 463 (2006), to vouch for the importance of a plea colloquy by stating, "We have held that a criminal defendant has a right to an arraignment hearing." Yet, in the case before us, no arraignment hearing was requested. While the *Hamm* citation was merely linguistic legerdemain, the majority's use of out-of-state cases do not support its analysis. It cites *Mississippi Comm'n on Judicial Performance v. Atkinson*, 645 So. 2d 1331 (Miss. 1994), for the proposition that "a lawyer's participation as a judge was substantial where the judge's action in his judicial capacity was required to perform the action." *Atkinson* makes no such holding. *Atkinson* is an appeal of a Mississippi judicial discipline case in which a sitting part-time municipal court judge was reprimanded for violating several canons of judicial ethics when he set the bail for an accused while serving as a judge and subsequently argued for a reduction in the bond while acting as a practicing attorney.

The majority's resort to *Boldridge v. State*, 215 P.3d 585 (Kan. 2009), is equally unavailing. *Boldridge* is a Kansas State habeas corpus appeal in which a lawyer who was formerly a pro tempore judge who had previously authorized the issuance of subpoenas for evidence used in the case was appointed as the accused person's trial counsel in a murder case without the accused having validly waived the appointed counsel's conflict of interest. The Kansas Supreme Court, however, held that the validity of the waiver was not

"structural error" requiring automatic reversal and that the conflict of interest did not affect the adequacy of representation and was not reversible error.

This court has erred in affirming the circuit court's decision to exclude Mr. Floyd's counsel of choice for no reason other than the prosecutor's petulance. The State filed no written motion or brief—it merely "withheld consent" to Attorney Crow representing Mr. Floyd, without any justification other than citation to a rule of professional conduct. In my view, the decision disqualifying Attorney Crow is a more egregious abuse of discretion than *Berry, supra*; *Morgan*, *supra*, and *Samontry*, *supra*, and as noted previously, this court reversed in all three of those cases.

I would reverse and remand to allow Mr. Floyd the counsel of his choice.

*Gerald K. Crow*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.