Josephine Linker Hart, Justice, dissenting. h¡>I dissent. The majority states the correct standard for determining the propriety of disqualifying a party’s trial counsel. It simply fails to properly apply that standard to the facts before us. The case law that the majority purports to rely on should have directed it down a different path. In Saline Memorial Hospital v. Berry, 321 Ark. 588, 906 S.W.2d 297 (1995), this court reversed a trial court’s disqualification of counsel. We likewise reversed a circuit court’s disqualification decision in Burnette v. Morgan, 303 Ark. 150, 794 S.W.2d 145 (1990). Even in Samontry v. State, 2012 Ark. 105, 387 S.W.3d 178, which the majority cites for the proposition that “the presumption in favor of a party’s choice of counsel may be overcome by the demonstration of an actual conflict of interest or by a showing of a serious potential for conflict,” this court nonetheless held that the circuit court abused its discretion in disqualifying the trial counsel. Accordingly, the language in Samontry is merely dicta. However, assuming that the Samontry dicta does offer some guidance to this court, it should compel us to .reverse the circuit court’s ruling. The State put on no evidence to demonstrate that Attorney Crow’s prior service in the case as a judge created an “actual conflict of interest” or even “a serious potential for conflict.” Merely asserting that then Judge Crow signed the arrest warrant and accepted Mr. Floyd’s not-guilty plea proves nothing. Under the Arkansas Rules of Criminal Procedure, the State has an extensive, affirmative duty to disclose to the defense almost all of the information that it has in its possession. Ark. R. Crim. P. 17.1. I am mindful that there are narrow exceptions | ^recognized by Rule 17.4 and 17.5, however, the State did not assert that any of these exceptions applied or that it had made then Judge Crow privy to that information. Likewise, merely calling signing the arrest warrant and accepting Mr. Floyd’s not-guilty plea “matters of clear and weighty importance” does not make them so. Regarding the arrest warrant, contrary to the majority’s assertions, then Judge Crow was not required to “weigh the merits.” Rather, pursuant to Arkansas Code Annotated section 16-81-104(a), the issuing judge or magistrate is required to issue an arrest warrant if, based on information given him under oath, he is “satisfied that there are reasonable grounds for believing the charge.” This is a very low showing — section 16-81-104(a) does not require that the issuing judge or magistrate actually believe that the offense was committed, which would be closer to making a decision on the merits, but only that there are “reasonable grounds for believing the charge.” Decisions on the “merits” are left to the trier of fact. The remote, administrative nature of issuing an arrest warrant is further shown by the fact that section 16-81-104 has reduced the process to filling out a form, which is included in the statute.[1] luln the case before us, the affidavit for the. arrest warrant recited the victim’s statement, which contained details about the time and the place of the alleged incidents. The statement established all of the elements of the offense. The affidavit also stated that the victim had repeated the allegation to several named adults. Obviously, this information constituted a reasonable basis for believing the charge. Of course the “merits” will involve putting the victim before a trier of fact where the veracity of the accusation can be tested. Then Judge Crow took no testimony before signing the warrant.- While I will not foreclose the possibility that there could be instances in which the involvement of the magistrate would be more extensive, that was not the situation in this case. Likewise, the act of accepting Mr. Floyd’s not-guilty plea was a remote administrative task. This is proven by the transcript of the proceeding: The CouRt: All right. Phillip Floyd, CR2014-136, Mr. Floyd is present before the Court with Mr. Brian Ra-bal. MR. Rabal: That’s correct, Your Honor. The CouRt: All right. The State is appearing by Ms. Goodman. We’re here today for purposes of arraignment. Mr. Floyd is charged with the offense of rape, a class Y felony.' And; Mr. Rabal, have you had the opportunity to review this matter with your client? Mr. Rabal: I have Your Honor. The Court: Are you prepared to enter a plea today? Mr. Rabal: We are. The Court: And what says— Mr. Rabal: My client — yeah, my client would like to plead not guilty. The CouRt: All right. You’ve advised your client of the nature of the charges, his constitutional rights, and pleas available to him? Mr. Rabal: I have, Your Honor. The Court: All right. Not guilty plea will be entered. Is the State’s file open? Ms. Goodman: Yes, sir. The Court: Mr. Rabal [sic] is currently free on a $25,000 corporate surety bond. There is a No Contact order in place with the alleged victim. Jury trial will be set for the week of July the 15th, 2015 in Berryville. Mr. Rabal, as you are probably aware, I am leaving the bench at the end of this year. Judge Jack- ■ son will be taking the Circuit Court. You will probably need to coordinate with the Prosecuting Attorney for the purposes of further proceedings and any preliminary hearings, including any suppression hearings that you may wish to conduct. Mr. Rabal: Okay. I will do so, Your Honor. The Court: All right.- Anything further then with regard to Mr, Floyd? Ms. Goodman: No, sir. The Court: All right. Thank you. Mr. Rabal: Thank you, Your Honor. That concludes my business. May I be excused? The Court: You may, sir. Thank you. Mr. Rabal: Thank you. | HjCalling this brief colloquy “a matter of clear and weighty importance [that] cannot be considered merely an administrative responsibility” is intellectually dishonest. The authority' that the majority purports to rely on is nothing more than a smokescreen. It cites Hamm v. State, 365 Ark. 647, 232 S.W.3d 463 (2006), to vouch for the importance of a plea colloquy by stating, “We have held that a criminal defendant has á right to an arraignment hearing.” Yet, in the case before us, no arraignment hearing was requested. While the Hamm citation was merely linguistic legerdemain, the majority’s use of out-of-state cases do not support its analysis. It cites Mississippi Comm’n on Judicial Performance v. Atkinson, 645 So,2d 1331 (Miss.1994), for the proposition that “a lawyer’s participation as a judge was substantial where the judge’s action in his judicial capacity was required to perform the action.” Atkinson makes no such holding. Atkinson is an appeal of a Mississippi judicial discipline case in which a sitting part-time municipal court judge was reprimanded for violating several canons of judicial ethics when he set the bail for an accused swhile serving as a judge and subsequently argued for a reduction in the bond while acting as a practicing attorney. The majority’s resort to Boldridge v. State, 289 Kan. 618, 215 P.3d 585 (2009), is equally unavailing.- Boldridge is a Kansas State habeas corpus appeal in which a lawyer who was formerly a pro tempore judge who had- previously authorized the issuance of subpoenas for evidence used in the case was appointed as the accused person’s trial counsel in a murder case without the accused having validly.waived the appointed counsel’s conflict of interest. The Kansas Supreme Court, however, held that the validity of the waiver was not 117“structural error” requiring automatic reversal and that the conflict of interest did not affect the adequacy of representation and was not reversible error. ¡, This court has erred in affirmirig the circuit court’s decision to exclude Mr. Floyd’s counsel of choice for no reason other than the prosecutor’s petulance. The State filed no written motion or brief — -it merely “withheld consent” to Attorney Crow representing Mr. Floyd, without any justification other than citation to a rule of professional conduct. In my view, the decision disqualifying Attorney Crow is a more egregious abuse of discretion than Berry, supra; Morgan, supra, and Samontry, supra, and as noted previously, this court reversed in all three of those cases. I would reverse and remand to allow Mr. Floyd the counsel of his choice.